# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 13, 2012

No. 11-30776

Lyle W. Cayce
Clerk

SERVICIOS AZUCAREROS DE VENEZUELA, C.A. and ZVONIMIR TOLJ, SR.,

Plaintiffs – Appellants,

v.

JOHN DEERE THIBODEAUX, INC.,

Defendant – Appellee.

---

Appeals from the United States District Court
for the Eastern District of Louisiana

---

Before DAVIS, DENNIS, and HAYNES, Circuit Judges.

JAMES L. DENNIS, Circuit Judge:

This case calls upon us to reaffirm the standing of citizens of foreign states to bring suits against citizens of the United States in federal courts; and to apply our circuit precedents holding that a district court's dismissal of a complaint for failure to follow briefing instructions is reserved for extreme circumstances, where there is a clear record of delay or contumacious conduct, and where lesser sanctions would not serve the best interests of justice.

Plaintiffs-Appellants Servicios Azucareros de Venezuela, C.A., a Venezuela corporation, and its president, Zvonimir Tolj, Sr., a citizen of Venezuela, (collectively, "Servicios"), filed suit in the United States District Court for the

No. 11-30776

Eastern District of Louisiana against Defendant-Appellee, John Deere Thibodaux, Inc. ("John Deere"),[1] a Louisiana corporation, for breach of a contract providing for Servicios's exclusive distributorship of John Deere products in Venezuela. Servicios appeals the district court's judgment, which dismissed the complaint on two grounds: Servicios's alleged lack of prudential standing as the citizen of a foreign state to bring this suit in a U.S. district court and Servicios's failure to follow the court's instructions in filing a supplemental brief. We conclude that neither ground supports the dismissal of Servicios's suit. Accordingly, the district court's order dismissing the complaint is vacated and the case is remanded to it for further proceedings.

## I.

Servicios alleges that prior to the events leading up to this lawsuit, it had a contract with Cameco Industries, Inc., making Servicios the exclusive distributor of John Deere products in Venezuela; that in 1996, Cameco changed its name to John Deere Thibodaux; that under the contract, Servicios is entitled to receive, and did for many years receive, a 20% commission on all John Deere harvesters and tractors, and a 25% commission on spare parts, sold in Venezuela. Servicios alleges that the contract was oral but was substantiated with various written instruments over the years. Servicios asserts that through its efforts over the years, it successfully developed the Venezuela market for John Deere products. Servicios alleges that after John Deere changed its name, it wrongfully reduced Servicios's commission from 20% to 10% and, using

---

[1] John Deere is incorrectly identified in case filings and caption as "John Deere Thibodeaux, Inc."

2

No. 11-30776

"economic duress," eventually attempted to terminate the contract altogether. Servicios alleges that John Deere's breach of contract caused it to suffer over $1.5 million in damages.

Servicios filed the present lawsuit in the United States District Court for the Eastern District of Louisiana pleading alienage jurisdiction and seeking, inter alia, damages for breach of contract. Servicios pleaded claims under Louisiana and, alternatively Venezuela, law. Under Louisiana law, Servicios seeks recovery of damages for breach of contract under the contract law principles of Louisiana Civil Code, articles 1983, 1966-67, 2013-14, and 2024 and, alternatively, unjust enrichment under article 2298 and commissions wrongfully withheld under Louisiana Revised Statutes, sections 51:481-90. Under Venezuelan law, Servicios asserts contract remedies pursuant to Venezuela Civil Code articles 1159, 1212, and 1264, unjust enrichment under article 1184, and moral damages under article 1196.

John Deere filed a 12(b)(6) motion to dismiss, arguing, inter alia, that Servicios did not have standing to sue "under the well-established rule of prudential standing that prohibits non-resident aliens from maintaining suit in American federal courts." The parties submitted briefing on John Deere's motion. Servicios contended that there is no valid legal basis for the prudential standing requirement John Deere seeks to invoke. Servicios also argued that it should be afforded access to U.S. courts for a variety of reasons, including international comity and the United States's obligations under the United States–Venezuela treaty guaranteeing access to U.S. courts for Venezuelan citizens on the same terms as U.S. citizens if they are "transient or dwelling" in

3

No. 11-30776

the United States.[2]  Servicios also defended the sufficiency of its complaint on the merits and in the alternative requested an opportunity to amend its complaint.

The district court requested supplemental briefing on two issues "in light of the D.C. Circuit's recent ruling" in *Doe v. Exxon Mobil Corp.*, 654 F.3d 11 (D.C. Cir. 2011).  The order listed the issues as: "(1) Standing.  Ignoring any rule on non-resident alien standing, do the plaintiffs meet the zone-of-interests test for prudential standing? (2) Choice of law.  Does Louisiana or Venezuela law govern plaintiffs' claims?  *See* LA. CIV. CODE. ANN. arts. 3542-3548."  The district court also ordered that the supplemental briefs could not exceed five pages.

John Deere filed a supplemental brief in response to the court's order essentially restating its prior arguments and arguing that Venezuelan law applies.  Servicios filed a motion for leave to file an amended "petition" and a motion for leave to file a supplemental opposition to John Deere's motion.  Servicios also filed a motion to amend its complaint to plead prudential standing.  Servicios' "supplemental opposition" contained its response to the court's request for supplemental briefing; among other things, Servicios argued that the prudential standing requirement on which John Deere relies has no basis in law and that the D.C. Circuit opinion in *Exxon Mobil*, the case on which the court requested supplemental briefing, confirms the invalidity of that standing requirement.  Servicios also argued that under Louisiana's choice of law rules,

---

[2]*See* Treaty of Peace, Friendship, Navigation and Commerce Between the United States and Venezuela, U.S.-Venez., art. XIII, Jan. 20, 1836, 8 Stat. 466, 1836 WL 3643.

No. 11-30776

Louisiana substantive law governed, and that it met the zone of interests test for prudential standing. However, the brief was twenty-five pages long.

The district court denied Servicios' motion for leave to file the supplemental opposition, referencing the court's previous order requesting supplemental briefing. The district court also granted John Deere's 12(b)(6) motion to dismiss in an order that stated in its entirety:

> Before the Court is the defendant John Deere Thibodaux, Inc.'s Rule 12(b)(6) motion to dismiss, which was set for hearing on the papers on July 20, 2011. On July 15, 2011, the Court ordered supplemental briefing on (1) prudential standing and (2) choice of law. Because the plaintiffs failed to respond to the Court's July 15 Order, and further, it appearing to the Court that the motion has merit, IT IS ORDERED: The motion is GRANTED as unopposed.

The court's single footnote stated: "The plaintiffs have not addressed the question of prudential standing as the Court requested, and the issue is therefore deemed waived. The plaintiffs are therefore DISMISSED for lack of standing."

Servicios then filed a motion to "reopen," which the district court construed as a Rule 59(e) motion to alter or amend. The district court denied the motion, explaining:

> In evaluating the defendant's motion to dismiss, the Court considered extensive briefing, and requested supplemental briefing on two discrete issues. The plaintiffs ignored the order and instead elected to file an excessively long brief which did not address the issues on which the Court ordered supplemental briefing. Because the plaintiffs failed to address issues this Court deemed necessary to the resolution of defendant's motion, the Court treated those issues as waived and granted the defendant's motion on standing grounds.

Meanwhile, on August 24, 2011, Servicios filed a notice of appeal from the district court's July 29, 2010 order dismissing its complaint. On September 1,

No. 11-30776

2011, the district court denied Servicios's motion for reconsideration. On September 9, 2011, Servicios filed an amended notice of appeal to include the denial of its motion to reconsider.

## II.

"Every federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review, even [if] the parties are prepared to concede it." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95 (1998) (alteration and quotation marks omitted). "And if the record discloses that the lower court was without jurisdiction this court will notice the defect, [even if] the parties make no contention concerning it. When the lower federal court lacks jurisdiction, we have jurisdiction on appeal, not of the merits but merely for the purpose of correcting the error of the lower court in entertaining the suit." *Id.* (alterations and quotation marks omitted). Thus, the threshold jurisdictional question is whether Servicios had standing to sue.

Article III, § 2 of the Constitution extends the "judicial Power" of the United States only to "Cases" and "Controversies." U.S. CONST. art. III, § 2. The Supreme Court has "always taken this to mean cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process." *Steel Co.*, 523 U.S. at 102. According to Supreme Court doctrine, "[t]he 'irreducible constitutional minimum of standing' contains three requirements. First and foremost, there must be alleged (and ultimately proved) an 'injury in fact'—a harm suffered by the plaintiff that is 'concrete' and 'actual or imminent, not 'conjectural' or 'hypothetical.' Second, there must be causation—a fairly

traceable connection between the plaintiff's injury and the complained-of conduct of the defendant.  And third, there must be redressability—a likelihood that the requested relief will redress the alleged injury.  This triad of injury in fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence." *Id.* at 102-04 (internal citations and footnote omitted); *accord, e.g.*, *Camreta v. Greene*, 131 S. Ct. 2020, 2028 (2011); *Ariz. Christian Sch. Tuition Org. v. Winn*, 131 S. Ct. 1436, 1442 (2011); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975).

Applying the foregoing principles, we conclude that Servicios carried its burden of establishing its Article III standing to bring this suit.  Servicios alleged that it suffered loss of commissions and profits because of John Deere's breach of Servicios's exclusive distributorship contract for John Deere products in Venezuela.  This is a direct personal injury and a kind of harm required for standing under Article III.  Injuries to rights recognized at common law— property, contracts, and torts—have always been sufficient for standing purposes. *See* ERWIN CHEMERINSKY, FEDERAL JURISDICTION § 2.3, at 67-68 (6th ed. 2012) (citing *Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269 (2008); *Tenn. Elec. Power Co. v. Tenn. Valley Auth.*, 306 U.S. 118 (1939)); *see also Comer v. Murphy Oil USA*, 585 F.3d 855, 864 n.3 (5th Cir. 2009).[3]  A contract claim

---

[3]*Vacated on other grounds on grant of rehearing en banc*, 598 F.3d 208, *en banc appeal dismissed for lack of quorum*, 607 F.3d 1049 (5th Cir. 2010).

No. 11-30776

under the Louisiana Civil Code is not derived from common law sources but is nevertheless essentially the same as a common law contract claim for the purpose of establishing standing in federal courts. Servicios has alleged that it suffered an injury-in-fact, $1.5 million in damages that was caused by John Deere's alleged breach of contract, and, should it prove its case on the merits, its injury would be redressable by the district court. *See Steel Co.*, 523 U.S. at 102-04. The requirements of Article III standing are satisfied.

Finally, we have subject-matter and appellate jurisdiction over this suit. Subject-matter jurisdiction in this case is provided by alienage and diversity of citizenship. *See* U.S. CONST. art. III, § 2, cl. 1; 28 U.S.C. § 1332(a)(2). The requirements of diversity jurisdiction, and specifically alienage jurisdiction, are satisfied as plaintiffs are citizens of Venezuela, a foreign state, and defendant, John Deere Thibodaux, Inc., is a Louisiana corporation, and the complaint seeks approximately $1.5 million in damages, an amount in controversy in excess of the required sum or value of $75,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332. We have jurisdiction to review appeals from all final decisions of the district courts, except where a direct review may be had in the Supreme Court. 28 U.S.C. § 1291. As the district court's orders were intended to terminate the action and the appeal was taken fewer than 30 days after the court entered its last order, we have appellate jurisdiction. *See* FED. R. APP. PROC. 4(a)(1)(A); *United Steelworkers of Am. v. Am. Int'l Aluminum Corp.*, 334 F.2d 147, 153 n.4 (5th Cir. 1964).

After performing our independent obligation to ascertain that Servicios's complaint satisfies the requirements of constitutional standing and alienage jurisdiction, we now address the only disputed issues in this appeal—whether

No. 11-30776

Servicios  failed to satisfy any applicable requirement of prudential standing, and whether the district court abused its discretion by dismissing Servicios' complaint because it failed to comply with the court's instructions as to supplemental briefing.

### III.

John Deere argues that Servicios lacks prudential standing to maintain suit in federal court. "[S]tanding jurisprudence contains two strands: Article III standing, which enforces the Constitution's case-or-controversy requirement, and prudential standing, which embodies 'judicially self-imposed limits on the exercise of federal jurisdiction[.]'" *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004).  Thus, unlike the requirements of Article III standing, prudential standing requirements are not strictly required by Article III of the Constitution. *See, e.g.*, *Bennett v. Spear*, 520 U.S. 154, 162 (1997); *Warth*, 422 U.S. at 500-01.  Although the Supreme Court has "not exhaustively defined the prudential dimensions of the standing doctrine, [the Court] ha[s] explained that prudential standing encompasses 'the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked.'" *Elk Grove*, 542 U.S. at 12 (internal citations omitted).  "Without such limitations[,] . . . the courts would be called upon to decide abstract questions of wide public significance even though other governmental institutions may be more competent to address the questions and

No. 11-30776

even though judicial intervention may be unnecessary to protect individual rights." *Id.* (quotation marks omitted).

Servicios's breach of contract claim is clearly not barred by any aspect of the prudential standing doctrine. Servicios does not seek to raise anyone else's legal rights; it has asserted its own personal and particularized injuries, not generalized grievances; and its injuries involve the type of interests that have traditionally been protected by the common law of contracts or, in Louisiana, by a similar body of law, the Louisiana Civil Code articles on conventional obligations or contracts. *See Comer*, 585 F3d at 868 n.7; *see also, e.g.*, *Sprint Commc'ns Co.*, 554 U.S. at 290 (holding that assignees for collection of contract claims were not bringing third-party grievances but their own first-party legal rights); *Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 777-78 (2000) (holding that lawsuits by assignees are "cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process").

John Deere does not disagree with the foregoing analysis but instead argues that Servicios' suit lacks prudential standing for two entirely different reasons: (1) it does not fall within the "zone of interests" of a federal statute sued upon and (2) it does not fall within an exception to the general rule prohibiting a citizen of a foreign state from bringing suit against a citizen of a state of the United States in a U.S. federal court. These arguments are based on faulty premises and therefore have no merit.

## A.

John Deere first argues that Servicios cannot maintain suit because it has not satisfied the "zone of interests" requirement of prudential standing. The

No. 11-30776

Administrative Procedures Act (APA) authorizes suit to challenge a federal agency by any "person . . . adversely affected or aggrieved . . . within the meaning of a relevant statute[.]" 5 U.S.C. § 702. The Supreme Court has held that this language establishes a regime under which a plaintiff may not sue unless he "falls within the 'zone of interests' sought to be protected by the statutory provision whose violation forms the legal basis for his complaint." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 883 (1990); *accord Ass'n of Data Processing Serv. Orgs., Inc. v. Camp,* 397 U.S. 150, 153 (1970) (reciting the test as "whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question"). The Court has described the "zone of interests" test as denying a right of review "if the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit." *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 399 (1987).

    We agree with the view that the zone-of-interests test is an additional standing requirement only in cases seeking review of agency decisions under the APA. *See, e.g.*, *Clarke*, 479 U.S. at 400 n.16; *Procter & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 562 n.49; CHEMERINSKY, *supra*, at 107; *cf. Thompson v. N. Am. Stainless, LP*, 131 S. Ct. 863, 870 (2011) (adhering to the view that the zone of interests test is derived from administrative law but holding that Congress intended to import this test to the Title VII context when it employed the phrase "person aggrieved"). In *Clarke*, the Court explained that "[t]he principal cases in which the 'zone of interest' test has been applied are those involving claims under the APA, and the test is most usefully understood as a gloss on the

11

No. 11-30776

meaning of § 702[,]" which authorizes judicial review of administrative action. 479 U.S. at 400 n.16.  Because Servicios has not brought its claim under a federal statute, constitutional provision, or the APA, the zone-of-interests test is not applicable to this case.  Servicios's claim is based on private contract law principles, and as we concluded above, claims based on contracts under the common law or the substantially similar civil code contract principles are sufficient for standing purposes.[4]   Thus, we conclude that the zone of interests requirement of prudential standing is not a bar to Servicios' contract claims.

**B.**

Next, John Deere argues that Servicios's suit should be dismissed because of a purported rule of prudential standing that a nonresident alien does not have standing to sue a United States citizen or corporation in a federal court except in certain circumstances not present here.   We reject the argument as totally without merit.  The Framers intended, and specifically provided, that foreign citizens have access to federal courts.  John Deere's argument is based on a false doctrine initiated by a district court in the D.C. Circuit that has been discredited by the Court of Appeals of that circuit.  Moreover, it is foreclosed by the Supreme Court's decisions discussing the history and purpose of the alienage jurisdiction provisions of Article III and federal jurisdictional statute.

Article III of the Constitution provides for  jurisdiction in the federal courts over all "Controversies . . . 'between a State, or the Citizens thereof, and

---

[4]Servicios also asserts a theory of recovery pursuant to the Louisiana Dealer Agreement Act, LA. REV. STAT. §§ 51:481-90.  The district court did not reach this issue and we express no opinion as to whether Servicios may recover under the Act.

12

foreign States, Citizens, or Subjects,'" U.S. CONST. art. III, § 2, cl. 1, as does the diversity jurisdiction statute, 28 U.S.C. § 1332(a)(2) (conferring diversity jurisdiction in civil actions between "citizens of a State and citizens or subjects of a foreign state," excepting lawful permanent residents domiciled in the same state). "Thus, from the beginning of the nation it was envisioned that the federal courts would hear cases involving foreign citizens [under their] so-called alienage jurisdiction."[5] The alienage jurisdiction provided for in Article III and 28 U.S.C. § 1332(a)(2) was intended from the beginning to create a federal forum for contract disputes between foreign creditors and American citizens and corporations. *JPMorgan Chase Bank v. Traffic Stream (BVI) Infrastructure Ltd.*, 536 U.S. 88, 94-96 (2002).

"Both during and after the Revolution, state courts were notoriously frosty to British creditors trying to collect debts from American citizens, and state legislatures went so far as to hobble British debt collection by statute, despite the specific provision of the 1783 Treaty of Paris that creditors in the courts of either country would 'meet with no lawful impediment' to debt collection." *Id.* at 94. "This penchant of the state courts to disrupt international relations and discourage foreign investment led directly to the alienage jurisdiction provided by Article III of the Constitution. '[T]he proponents of the Constitution . . . made it quite clear that the elimination or amelioration of difficulties with credit was the principal reason for having the alienage and diversity jurisdictions, and that

---

[5] 13E CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3604, at 146 & n.2 (3d ed. 2009 & Supp. 2012) (citing, inter alia, *Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 380-81 (1959)).

No. 11-30776

it was one of the most important reasons for a federal judiciary.'"[6] Accordingly, federal courts have repeatedly entertained contract suits by foreign plaintiffs without determining whether any prudential standing requirement had been satisfied.[7]

Nevertheless, John Deere argues that Servicios's suit is barred by what it claims is a "general rule of prudential standing" that nonresident aliens cannot maintain suit in federal court. John Deere relies principally on a district court's pronouncement that there is a "general rule that non-resident aliens have no standing to sue in United States courts." *Berlin Democratic Club v. Rumsfeld*, 410 F. Supp. 144, 152 (D.D.C. 1976). To the extent that *Berlin Democratic Club*

---

[6]*Id.* at 94-95 (quoting Wythe Holt, *"To Establish Justice": Politics, the Judiciary Act of 1789, and the Invention of the Federal Courts*, 1989 DUKE L.J. 1421, 1473); *see also id.* at 95-96 (surveying the federal constitutional debates) (citing 2 DEBATES ON THE FEDERAL CONSTITUTION 492-93, 534, 583 (Jonathan Elliot ed. 1876)); Kevin R. Johnson, *Why Alienage Jurisdiction? Historical Foundations and Modern Justifications for Federal Jurisdiction over Disputes Involving Noncitizens*, 21 YALE J. INT'L L. 1, 10-16 (1996) (detailing Founders' debate over alienage provisions of Article III).

[7]*See, e.g.*, *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398 (1964); *Corfield v. Dallas Glen Hills LP*, 355 F.3d 853 (5th Cir. 2003); *Jaff v. Cal-Maine Foods, Inc.*, 774 F.2d 1314 (5th Cir. 1985); *Ed & Fred, Inc. v. Puritan Marine Ins. Underwriters Corp.*, 506 F.2d 757 (5th Cir. 1975); *see also* 14A WRIGHT, MILLER, & COOPER § 3661, at 133-34 & n.5 (collecting cases in which a noncitizen was permitted to file suit against a state citizen in federal district court). *Cf. Estrada v. Ahrens*, 296 F.2d 690, 695 (5th Cir. 1961) (rejecting the government's argument that the nonresident alien plaintiffs lacked standing to seek mandamus relief in their immigration cases, reasoning that the APA afforded them a right to judicial review and that "[n]onresidence and absence . . . have no importance and no relevance here. When an alien, even one perhaps forever destined to be pursued and plagued by his past, has knocked at the door of this country[,] . . . he has a right . . . [to a] hearing").

No. 11-30776

and its followers endorsed such a prudential standing rule,[8] the rule appears to have been discredited by the D.C. Circuit's opinion in *Doe v. Exxon Mobil Corp.*, 654 F.3d 11, 65-68 (D.C. Cir. 2011) (observing that *Berlin Democratic Club* was based on a misinterpretation of Supreme Court precedent and holding "that there is no per se rule against standing for non-resident aliens in federal courts").[9]

The purported authority for the rule announced in *Berlin Democratic Club* is the Supreme Court's opinion in *Johnson v. Eisentrager*, 339 U.S. 763 (1950).[10]

---

[8]*See, e.g.*, *Kukatush Mining Corp. v. SEC*, 309 F.2d 647, 650 (D.C. Cir. 1962) (holding that a nonresident alien corporation, which transacted no business and had no assets in the United States, lacked standing because the court did not "ha[ve] jurisdiction of the subject res or with the preferred rights under immigration laws"), *overruling recognized in Exxon Mobil*, 654 F.3d at 66-67; *Constructores Civiles de Centroamerica, S.A. (CONCICA) v. Hannah*, 459 F.2d 1183, 1191 (D.C. Cir. 1972) ("CONCICA, despite its status as a non-resident alien corporation, has standing to maintain suit."), *limitation recognized by Exxon Mobil*, 654 F.3d at 67; *DKT Mem'l Fund Ltd. v. Agency for Int'l Dev.*, 691 F. Supp. 394, 399 (D.D.C. 1988) (noting the rule in *Berlin Democratic Club* but observing the rule "is not as clear-cut as the defendants would have this Court believe"), *rev'd in part*, 887 F.2d 275 (D.C. Cir. 1989); *Brady v. Xe Servs. LLC*, No. 09-449, 2011 WL 285241, at *3 (E.D.N.C. Jan. 26, 2011) (unpublished) (citing *Berlin Democratic Club* without analysis); *Doe v. Exxon*, 658 F. Supp. 2d 131, 134 (D.D.C. 2009), *rev'd*, 654 F.3d 11, 66 (D.C. Cir. 2011).

[9]We note that the D.C. Circuit's decision in *Exxon Mobil* has not yet been made final and may be subject to reconsideration on other grounds pending the Supreme Court's decision in *Kiobel v. Royal Dutch Petrol. Co.*, 132 S. Ct. 472 (2011). Nevertheless, we find the *Exxon Mobil* court's analysis abrogating *Berlin Democratic Club* persuasive and independently conclude that *Berlin Democratic Club*'s analysis was incorrect.

[10]*Superseded on other grounds by Braden v. 30th Judicial Circuit Court of Ky.*, 410 U.S. 484, 494-95 (1973), *as stated in Rasul v. Bush*, 542 U.S. 466, 478-79

15

No. 11-30776

*See Berlin Democratic Club*, 410 F. Supp. at 152. However, *Eisentrager* provides little or no foundation for the prudential standing rule described in *Berlin Democratic Club*. We agree with the D.C. Circuit's assessment that "[t]he [district] court in *Berlin Democratic Club* misread [*Eisentrager*], which concerned the constitutional rights of alien enemies, and took pains to distinguish alien friends. . . . [T]he Supreme Court intended only to address claims by enemy aliens." *Exxon Mobil*, 654 F.3d at 66 (citations omitted); *see Eisentrager*, 339 U.S. at 776 ("The standing of the enemy alien to maintain any action in the courts of the United States has been often challenged and sometimes denied.").[11] The *Eisentrager* Court did not establish any general rule of prudential standing that nonresident aliens were barred from obtaining civil relief in American courts. To the contrary, Article III and § 1332(a)(2)'s alienage jurisdiction provisions were from the very beginning intended to provide a federal forum for civil disputes between foreign plaintiffs and American citizens. *See JPMorgan Chase*, 536 U.S. at 94-96.

For these reasons, we conclude that there is no per se rule against standing for non-resident aliens in federal courts, as John Deere contends, and that the principles of prudential standing do not call for the dismissal of Servicios's suit.[12]

_____

(2004).

[11]*Cf. Rasul*, 542 U.S. at 475-80 (holding that habeas corpus was available to detainees of Guantánamo Bay, distinguishing *Eisentrager* on its facts, and holding that *Eisentrager* does not affect the statutory basis of habeas jurisdiction over foreign nationals' petitions).

[12]Accordingly, we need not reach Servicios' alternative argument that despite any prudential standing bar, it should be afforded access to our courts

16

No. 11-30776

## IV.

Having concluded that Servicios has satisfied the constitutional and prudential standing requirements, we next review the district court's dismissal of plaintiffs' suit for failure to carefully follow its instructions as to supplemental briefing. We review a district court's grant of a dispositive motion based on a litigant's failure to abide by procedural rules or orders for abuse of discretion. *See, e.g.*, *Berry v. CIGNA/RSI-CIGNA*, 975 F.2d 1188, 1190-91 (5th Cir. 1992); *Flaksa v. Little River Marine Constr. Co.*, 389 F.2d 885, 888 (5th Cir. 1968). Although district courts have discretion to impose rules to effect the orderly and efficient handling of cases, "we have not approved the automatic grant, upon failure to comply with such rules, of motions that are dispositive of the litigation." *John v. Louisiana*, 757 F.2d 698, 709 (5th Cir. 1985). Where a district court's order dismissing a complaint effectively "bars further litigation, the standard of review of the District Court's dismissal should be the same as is used when reviewing a dismissal with prejudice." *Boazman v. Econ. Lab., Inc.*, 537 F.2d 210, 213 (5th Cir. 1976).

The first ground on which the district court based its dismissal order was the plaintiffs' asserted failure "to address issues th[e] [c]ourt deemed necessary to the resolution of defendant's motion." Although Servicios' brief exceeded the prescribed length, Servicios complied with the district court's request for supplemental briefing on the zone of interests test and choice of law. In its brief, Servicios argued that *Exxon Mobil* foreclosed John Deere's prudential standing

---

because of principles of comity and, more specifically, because the United States and Venezuela have entered into a Treaty regarding access to courts. *See* Treaty of Peace, Friendship, Navigation and Commerce Between the United States and Venezuela, U.S.-Venez., Jan. 20, 1836, 8 Stat. 466, 1836 WL 3643.

argument, that Louisiana law governs, and that Servicios satisfied the zone-of-interests test for prudential standing.  The briefing was verbose and addressed issues the district court may have felt were extraneous, but the only material deficiencies in Servicios's brief were its lack of concision and excessive length.

Although the district court had discretion to impose procedural rules, such as its page limitation on supplemental briefs, "we have not approved the automatic grant, upon failure to comply with such rules, of motions that are dispositive of the litigation."  *John*, 757 F.2d at 709; *accord, e.g.*, *Ramsey v. Signal Delivery Serv., Inc.*, 631 F.2d 1210, 1214 (5th Cir. 1980) (court-ordered filing deadline); *Boazman*, 537 F.2d at 211-12 (same); *see also, e.g.*, *Berry*, 975 F.2d at 1191 (dismissal for failure to file a motion for default judgment); *Flaksa*, 389 F.2d at 887 (dismissal for attorney's repeated unpreparedness and dilatory conduct).  Dismissal of a plaintiff's complaint due to a procedural deficiency is reserved for "extreme circumstances, where 'there is a clear record of delay or contumacious conduct,' and 'where lesser sanctions would not serve the best interests of justice[.]'"  *Boazman*, 537 F.2d at 212 (citations omitted).  The record does not reflect that Servicios violated multiple court orders or otherwise engaged in egregious obstructionist conduct, and the district court did not consider whether lesser sanctions than full dismissal would be appropriate and effective.  Therefore, Servicios's complaint should not have been dismissed on this ground.

In its order dismissing the case, the district court also stated in a footnote that Servicios had "waived" its standing argument because of its failure to file an adequate brief on the issue.  Even if Servicios had not briefed the issue at all, Rule 12 does not by its terms require an opposition; failure to oppose a 12(b)(6)

No. 11-30776

motion is not in itself grounds for granting the motion.[13]  Rather, a court assesses the legal sufficiency of the complaint.  *See* FED. R. CIV. P. 12(b)(6).  We conclude that the district court abused its discretion in dismissing Servicios' complaint to the extent that it did so as a penalty for its perceived failure to properly brief its opposition to John Deere's motion.

## V.

For these reasons, we VACATE the district court's judgment dismissing Servicios's complaint and REMAND the case to it for further proceedings.

---

[13]*See, e.g.*, *John*, 757 F.2d at 707-10 ("[A]lthough we have endorsed the adoption of local rules that require parties to file responses to opposed motions, we have not approved the automatic grant, upon failure to comply with such rules, of motions that are dispositive of the litigation."); *Ramsey*, 631 F.2d at 121; *accord, e.g.*, *McCall v. Pataki*, 232 F.3d 321, 322 (2d Cir. 2000) ("[F]ailure to oppose a 12(b)(6) motion cannot itself justify dismissal of a complaint.").