# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 28, 2022

Lyle W. Cayce
Clerk

No. 20-11032

———

CONTINENTAL AUTOMOTIVE SYSTEMS, INCORPORATED, *a Delaware corporation*,

*Plaintiff—Appellant*,

*versus*

AVANCI, L.L.C., *a Delaware corporation*; AVANCI PLATFORM INTERNATIONAL LIMITED, *an Irish company*; NOKIA CORPORATION, *a Finnish corporation*; NOKIA OF AMERICA CORPORATION, *a Delaware corporation*; NOKIA SOLUTIONS AND NETWORKS U.S., L.L.C., *a Delaware corporation*; NOKIA SOLUTIONS AND NETWORKS OY, *a Finnish corporation*; NOKIA TECHNOLOGIES OY, *a Finnish corporation*; OPTIS UP HOLDINGS, L.L.C., *a Delaware corporation*; OPTIS CELLULAR TECHNOLOGY, L.L.C., *a Delaware corporation*; OPTIS WIRELESS TECHNOLOGY, L.L.C., *a Delaware corporation*; SHARP CORPORATION, *a Japanese corporation*,

*Defendants—Appellees*.

———

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:19-CV-2933

———

No. 20-11032

Before Stewart, Ho, and Engelhardt, *Circuit Judges*.[1]

Carl E. Stewart, *Circuit Judge*:

This case is a new installment in a long-running battle between holders of patents essential to wireless standards and companies that make products incorporating those standards. Continental Automotive Systems, Inc. ("Continental"), an auto-parts supplier, brought suit in the Northern District of California against several standard-essential patent holders and their licensing agent, claiming violations of federal antitrust law and attendant state law. After the case was transferred to the Northern District of Texas, it was dismissed at the pleading stage. Continental appealed.

For the reasons that follow, we VACATE the judgment of the district court and REMAND with instructions to DISMISS for lack of standing.

## I. Factual Background

Plaintiff-Appellant Continental is a leading provider of automotive components, including connectivity products that utilize 2G, 3G, and 4G cellular standards.[2] One such product is the telematics control unit ("TCU"), a device that is embedded into the car and provides wireless connectivity. Today, TCUs allow many of us to stream music, navigate to destinations, and call for emergency assistance directly from our vehicles. They are widely anticipated to facilitate an even greater array of capabilities in tomorrow's connected car industry.

---

[1] Judge Ho would affirm the judgment of the district court that Continental sufficiently alleged Article III standing but failed to state a claim under the Sherman Act.

[2] A technical standard is "a specification of the design of particular goods or components . . . needed to ensure compatibility." John Black et al., Oxford Dictionary of Economics (3d ed. 2009). A cellular standard is a specification that facilitates compatibility between devices within a cellular network.

No. 20-11032

Certain Nokia Corporation entities, PanOptis Equity Holdings entities, and Sharp Corporation (collectively, "Patent-Holder Defendants") all claim to own or license patents essential to the 2G, 3G, and 4G cellular standards set by standard-setting organizations ("SSOs"). These patents are known as standard-essential patents ("SEPs") since suppliers like Continental could not create standard-conforming products like TCUs without infringing them.

Given the importance of SEPs, and the steep cost for suppliers to switch standards, standardization can enable SEP holders to demand more for the right to use their patents than those rights are worth. This conduct is known as patent hold-up.[3] To mitigate the risk that SEP holders will extract more than the fair value of their patented technologies, many SSOs require them to agree to license their patents on fair, reasonable, and nondiscriminatory ("FRAND") terms for incorporation into a standard.[4] Notably, SSOs do not establish FRAND licensing rates; rather, they are set in negotiations between SEP holders and licensees after the standard-setting process is complete. Here, under contracts they have with SSOs, Patent-Holder Defendants are committed to license their cellular SEPs on FRAND terms.

---

[3] *See, e.g.*, *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1209 (Fed. Cir. 2014) ("Patent hold-up exists when the holder of a SEP demands excessive royalties after companies are locked into using a standard."); U.S. Dep't of Just. & Fed. Trade Comm'n, Antitrust Enforcement and Intellectual Property Rights: Promoting Innovation and Competition 5 (2007) ("The ability of patentees to demand and obtain royalty payments based on the switching costs faced by accused infringers, rather than the ex ante value of the patented technology compared to alternatives, is commonly called 'hold-up.'").

[4] Some courts and commentators use "RAND" as an "alternative, legally equivalent abbreviation." *Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872, 877 n.2 (9th Cir. 2012).

No. 20-11032

Meanwhile, to facilitate patent licensing, many SEP holders enter into agreements with entities that act as licensing agents for a patent pool.[5] Here, Patent-Holder Defendants and thirty-seven non-parties to this suit entered into a patent licensing agreement (the Master License Management Agreement, "MLMA") with Avanci.[6] Avanci acts as the licensing agent for a pool of SEPs incorporated into cellular standards for connected devices—namely, vehicles. For a flat fee per device, it offers a "one-stop license" for connected cars. AVANCI, https://www.avanci.com (last visited Feb. 25, 2022).

At the heart of this case is the interplay of the FRAND and MLMA commitments, and whether this interplay presents an injury to Continental that can be reviewed and remedied. Since all of the SEPs for which Avanci acts as the licensing agent are encumbered by FRAND obligations, Avanci is similarly obligated to license them on FRAND terms. Yet under the MLMA, Avanci may sell licenses only to car manufacturers or original equipment manufacturers ("OEMs"). OEMs are downstream from Continental in the supply chain because they include connectivity products in their vehicles. But the MLMA permits members of the pool to individually license their SEPs beyond OEMs to suppliers like Continental at FRAND rates.

According to Continental, it sought SEP licenses from both Avanci and individual Patent-Holder Defendants (collectively, "Defendants-Appellees") at FRAND rates to no avail, in violation of the SEP holders' FRAND commitments. According to Defendants-Appellees, licenses were

---

[5] A patent pool "aggregate[es] intellectual-property rights that are the subject of cross-licensing, whether they are transferred directly by the patentee to a licensee or to some vehicle specifically established to administer the aggregated interests, such as a joint venture." *Patent Pool*, BLACK'S LAW DICTIONARY (11th ed. 2019).

[6] "Avanci" collectively refers to Avanci, LLC and Avanci Platform International Limited, both of which are parties to this lawsuit.

available to Continental on FRAND terms from individual SEP holders, and Continental does not need SEP licenses since Avanci licenses the OEMs that incorporate their products.

## II. PROCEDURAL HISTORY

Continental sued Avanci and Patent-Holder Defendants in the Northern District of California. In its amended complaint,[7] Continental argued that refusals to directly sell it a license on FRAND terms constituted not only a contractual breach but also anticompetitive conduct in violation of the Sherman Antitrust Act of 1890 ("the Sherman Act"), 15 U.S.C. §§ 1, 2. It further alleged violations of related state law, namely breach of contract, promissory estoppel, and unfair competition law. Finally, Continental sought declaratory relief as to Avanci and Patent-Holder Defendants' FRAND obligations and injunctive relief as to their unlawful conduct. It did not seek damages.

Shortly after Continental filed its amended complaint, Avanci and Patent-Holder Defendants moved to transfer venue to the Northern District of Texas under 28 U.S.C. § 1404(a). While that motion was pending, Avanci and Patent-Holder Defendants moved to dismiss Continental's amended complaint. Judge Lucy H. Koh then transferred the case, and Chief Judge Barbara M. G. Lynn (hereinafter, "the district court") ordered Avanci and Patent-Holder Defendants to file a revised motion to dismiss, accounting for Fifth Circuit law as well as "basic issues of standing and whether [Continental] has suffered an injury that can be reviewed at this juncture."

In their revised motion, Avanci and Patent-Holder Defendants sought dismissal under Rules 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted,

---

[7] Continental amended to add Sharp as a defendant after Sharp sued an OEM customer of Continental's for patent infringement.

respectively.[8] *See* FED. R. CIV. P. 12(b)(1); 12(b)(6). The district court accepted one of Continental's theories of injury for the purposes of constitutional standing, but it dismissed with prejudice Continental's Sherman Act claims for lack of antitrust standing and, alternatively, for failure to plausibly plead certain elements. It then declined to exercise supplemental jurisdiction over Continental's remaining claims pursuant to 28 U.S.C. § 1367(a). Continental timely appealed.

## III. STANDARD OF REVIEW

"[W]e always have jurisdiction to determine our own jurisdiction." *Tex. Democratic Party v. Hughs*, 997 F.3d 288, 290 (5th Cir. 2021). "Standing is a component of subject matter jurisdiction." *HSBC Bank USA, N.A. v. Crum*, 907 F.3d 199, 202 (5th Cir. 2018). "The jurisdictional issue of standing is a legal question for which review is de novo." *Id.* (citation omitted).

## IV. DISCUSSION

Our court must address any jurisdictional issue before reaching the merits of a plaintiff's claim. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998). "Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014) (quoting U.S. CONST. art. III, § 2). Given this limitation, a plaintiff is required to demonstrate "the irreducible constitutional minimum of standing" to bring suit. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

---

[8] They also moved to dismiss under Rule 12(b)(2) for lack of personal jurisdiction, but the district court did not assess the issue and none of the parties appealed that decision. *See* FED. R. CIV. P. 12(b)(2).

To establish Article III standing, a plaintiff must allege that it has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Ortiz v. Am. Airlines, Inc.*, 5 F.4th 622, 628 (5th Cir. 2021) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). "An injury in fact is 'an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.'" *Wilson v. Hous. Cmty. Coll. Sys.*, 955 F.3d 490, 495 (5th Cir. 2020) (quoting *Lujan*, 504 U.S. at 560). "A claim of injury generally is too conjectural or hypothetical to confer standing when the injury's existence depends on the decisions of third parties not before the court." *Little v. KPMG LLP*, 575 F.3d 533, 540 (5th Cir. 2009) (citing *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41 (1976)).

Continental alleges two theories of injury in fact. Neither are adequate to prove the supplier has Article III standing, let alone that it has antitrust standing or has suffered harm flowing from an antitrust violation.

### A. Indemnity Obligations

Continental's first theory of injury is that "*should* [Avanci and Patent-Holder Defendants] succeed in procuring . . . non-FRAND license[s] from . . . OEM[s,]" the royalties owed on those licenses "*risk* being passed through to . . . Continental" via indemnity agreements. The district court determined that this averred harm was insufficient to confer Article III standing since it is "not . . . actual or imminent." It emphasized that Continental's amended complaint did not allege that OEMs have been or likely will be forced to take non-FRAND licenses from Defendants-Appellees, or that those OEMs have or likely will pass non-FRAND costs onto Continental through indemnity obligations. Thus, according to the district court, Continental pled a mere "potential of [] being injured."

We agree. As Avanci and Patent-Holder Defendants observe, this alleged injury is "doubly speculative": Continental would not be harmed unless OEMs first accepted non-FRAND licenses and then invoked their indemnification rights against Continental. Here, the pleadings do not establish that OEMs have accepted such licenses and invoked such rights. Because Continental's "claim of injury depends on several layers of decisions by third parties—at minimum, [OEMs]"—it "is too speculative to confer Article III standing." *See Little*, 575 F.3d at 541; *see also Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("[T]he plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."); *cf. Millennium Petrochems., Inc. v. Brown & Root Holdings, Inc.*, 390 F.3d 336, 343 (5th Cir. 2004) ("[A]n indemnity claim does not . . . become actionable[] until all of the potential liabilities or damages . . . become fixed and certain.").

Continental seeks to bolster the adequacy of its allegations by referencing documents that the district court requested it submit to "convince [the court] that [Continental] ha[d] [suffered] potential injury." The district court ultimately made no substantive findings as to whether Continental's submissions were responsive or as to their contents, which it did not consider in connection with the motion to dismiss. This was within its discretion.

In reviewing Continental's submissions, we note some documents at most demonstrate that OEMs may seek to have Continental offset costs associated with licensing. "[A]s a potential contracting party, each [] is entitled to drive a hard bargain." *Wilkie v. Robbins*, 551 U.S. 537, 558 (2007). Once again, none of the documents indicate that an OEM has paid or will pay Avanci and Patent-Holder Defendants non-FRAND rates for a license. And none of the documents indicate that Continental has agreed or will agree to

No. 20-11032

indemnify OEMs for non-FRAND royalties paid to Avanci and Patent-Holder Defendants.

"This court f[inds] no overreaching to drive a hard bargain." *Twenty Grand Offshore, Inc. v. W. India Carriers, Inc.*, 492 F.2d 679, 682 (5th Cir. 1974). Defendants-Appellees' harm to Continental on account of Continental's indemnity obligations to OEMs remains speculative.[9]

## B. Refusal to License

Continental's second theory of injury is that Avanci and Patent-Holder Defendants have declined to provide Continental with a license on FRAND terms. The district court concluded that Continental pled a sufficient injury under this theory because "[t]he denial of property to which a plaintiff is entitled causes injury in fact." *Cont'l Auto. Sys., Inc. v. Avanci, LLC*, 485 F. Supp. 3d 712, 726 (N.D. Tex. 2020) (citing *Castro Convertible Corp. v. Castro*, 596 F.2d 123, 124 n.3 (5th Cir. 1979); *HTC Corp. v.*

---

[9] Meanwhile, the district court had no discretion to consider the new indemnity allegations that Continental made in its opposition to the motion to dismiss. As the district court explained:

> Briefing may clarify unclear allegations in a complaint. *Pegram v. Herdrich*, 530 U.S. 211, 230 n. 10 (2000). However, "it is axiomatic that a complaint cannot be amended by briefs in opposition to a motion to dismiss." *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 761 F. Supp. 2d 504, 566 (S.D. Tex. 2011). Plaintiff cannot amend the [amended complaint], which only suggests the possibility that Plaintiff could be required to indemnify OEMs, with new factual allegations in its Response seemingly averring that it has already indemnified or will indemnify them.

*Cont'l Auto. Sys., Inc. v. Avanci, LLC*, 485 F. Supp. 3d 712, 725 (N.D. Tex. 2020). Notably, Continental had the opportunity to request leave to further amend its complaint and incorporate such allegations—an opportunity that it expressly declined, later reconsidered, and ultimately forfeited. *See infra* note 13. It appears the new allegations in Continental's opposition suffer from the same infirmities as those in the aforementioned submissions. Regardless, we join the district court in evaluating the harm that Continental actually pled, which is "conjectural and hypothetical." *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

*Telefonaktiebolaget LM Ericsson*, No. 18-CV-243, 2018 WL 6617795, at *4–5 (E.D. Tex. Dec. 17, 2018); *Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodeaux, Inc.*, 702 F.3d 794, 800 (5th Cir. 2012)). According to the district court, Continental's alleged unsuccessful attempts to obtain licenses on FRAND terms from Defendants-Appellees comprise an injury in fact conferring Article III standing.[10] *Id.* at 727.

We disagree. Having reviewed the pleadings and relevant caselaw, we cannot conclude that Defendants-Appellees denied Continental property to which it was entitled and that Continental thereby suffered a cognizable injury in fact.

*i.*

As our sister circuits have recognized, entities that create standard-conforming products can be third-party beneficiaries under FRAND contracts between SSOs and SEP holders. *See, e.g.*, *Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872, 884 (9th Cir. 2012) (observing that Microsoft was a third-party beneficiary of the FRAND commitments made by Motorola to SSOs); *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 304, 313–14 (3d Cir. 2007) (observing that Broadcom was a third-party beneficiary of the FRAND commitments made by Qualcomm to SSOs). After all, FRAND obligations exist to protect the parties that must adopt a standard in order to conduct their business.

However, Continental is conspicuously different from the parties that our sister circuits have identified as third-party beneficiaries. In *Microsoft*,

---

[10] Although Continental did not allege an unsuccessful attempt to obtain a FRAND license from Sharp, the district court held that Sharp's "alleged agreement with the other Defendants to establish prices and refuse to license to Plaintiff at more favorable terms adequately pleads that Plaintiff has been injured by the Sharp Defendant" as well. *Avanci*, 485 F. Supp. 3d at 726; *see also supra* note 7.

third-party beneficiary Microsoft was itself a member of the SSOs that had negotiated FRAND contracts with Motorola. *See Microsoft Corp. v. Motorola, Inc.*, 871 F. Supp. 2d 1089, 1092 (W.D. Wash. 2012), *aff'd*, 696 F.3d 872 (9th Cir. 2012) ("Microsoft and Motorola are both members of the Institute of Electrical and Electronics Engineers ('IEEE') and the International Telecommunication Union ('ITU')."). Meanwhile, in *Broadcom*, third-party beneficiary Broadcom was a direct competitor of SEP holder Qualcomm that needed its SEP licenses to operate. *See Broadcom*, 501 F.3d at 304–05 (noting that both Broadcom and Qualcomm develop chipsets that must license Qualcomm's FRAND-encumbered SEPs).

Continental is not similarly situated to Microsoft and Broadcom. The supplier does not claim membership in the relevant SSOs and, crucially, it does not need SEP licenses from Defendants-Appellees to operate; Avanci and Patent-Holder Defendants license the OEMs that incorporate Continental's products. No evidence suggests that Patent-Holder Defendants and SSOs intended to require redundant licensing of third parties up the chain, which is unnecessary to effectuate the purpose of the FRAND commitments and reduce patent hold-up. "[A] beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties." Restatement (Second) of Contracts § 302 (Am. L. Inst. 1981). Continental does not appear to be an intended beneficiary contractually entitled to a license on FRAND terms. And as an incidental beneficiary, it would have no right to enforce the FRAND contracts between the Patent-Holder Defendants and the SSOs. *Id.*

*ii.*

But assuming Continental is contractually entitled to a license on FRAND terms as a third-party beneficiary, the pleadings reflect that it has suffered no cognizable injury. Put another way, even if Continental has rights

under FRAND contracts, the contracts have not been breached because the SEP holders have fulfilled their obligations to the SSOs with respect to Continental. The supplier acknowledges that Avanci and Patent-Holder Defendants are "actively licensing the SEPs to the OEMs[,]" which means that they are making SEP licenses available to Continental on FRAND terms. As it does not need to personally own SEP licenses to operate its business, it has not been denied property to which it was entitled. And absent a "denial of property to which a plaintiff is entitled," Continental did not suffer an injury in fact. *Avanci*, 485 F. Supp. 3d at 726.

In support of its holding that the denial of property to which Continental was entitled caused the supplier injury in fact, the district court cited three cases in which courts identified deprivations that conferred Article III standing. *See Castro*, 596 F.2d at 124 n.3 (observing that the denial of an employer's alleged right under a group insurance contract to have proceeds paid to a legally correct beneficiary was a sufficient allegation of injury in fact); *HTC*, 2018 WL 6617795, at *4–5 (observing that the denial of an OEM's alleged right to a SEP license on FRAND terms was a sufficient allegation of injury in fact); *Servicios*, 702 F.3d at 800 (observing that the denial of a corporation's alleged right to commissions and profits deriving from an exclusive distributorship contract was a sufficient allegation of injury in fact).

We certainly do not take issue with these standing determinations and the core tenet of federal jurisdiction that "[i]njuries to rights recognized at common law—property, contracts, and torts—have always been sufficient for standing purposes." *Servicios*, 702 F.3d at 800 (citing Erwin Chemerinsky, Federal Jurisdiction § 2.3, at 67–68 (6th ed. 2012)). Rather, we reiterate that Continental, the Plaintiff-Appellant in this case, experienced no such injury. We also note that in none of the cases cited by the district court was there an allegation, like there is here, that the

plaintiff could otherwise receive the benefit of a right conferred by contract even if the contractual right was "denied" directly.[11]

### iii.

On the face of Continental's complaint, there are no allegations that Patent-Holder Defendants have sued or threatened to sue Continental for infringing their SEPs. To the extent that Continental is alleging Patent-Holder Defendants have sued or threatened to sue *OEMs* for infringement, requiring OEMs to accept an Avanci license on non-FRAND terms, the OEMs may find it easier to establish an injury in fact. *See HTC*, 2018 WL 6617795 (holding that Ericsson, an OEM, had standing to bring a counterclaim against HTC for breaching its obligation to offer Ericsson a license on FRAND terms); *see also Broadcom*, 501 F.3d 297 (holding that a deceptive FRAND commitment to a SSO may constitute actionable anticompetitive conduct under the Sherman Act). Similarly, the *SSOs* may find it easier to establish an injury in fact if Patent-Holder Defendants breached the FRAND contracts that they entered into for incorporation into cellular standards by charging non-FRAND rates.[12] But these are not Plaintiffs-Appellants we have before us.

---

[11] Avanci and Patent-Holder Defendants also argue that not having to take a license may allow Continental to produce its components at a lower cost. *See Fed. Trade Comm'n v. Qualcomm Inc.*, 969 F.3d 974, 996 (9th Cir. 2020) (observing that a policy of providing "de facto licenses" to component suppliers "allow[s]" Qualcomm's "competitors to practice Qualcomm's SEPs (royalty-free) before selling their chips to downstream OEMs").

[12] And to the extent that suing SEP holders is impossible or undesirable, the SSOs could conceivably troubleshoot on the front-end, clarifying FRAND rates and providing explicit enforcement mechanisms in their operating documents.

No. 20-11032

In sum, the district court erred in holding that Continental had Article III standing to bring its claims. Given that we lack jurisdiction, we do not reach the parties' arguments as to antitrust standing and the merits.[13]

## V. Conclusion

For the foregoing reasons, the judgment of the district court is VACATED. The case is REMANDED with instructions to DISMISS Continental's claims for lack of standing.

---

[13] While Continental states in its opening brief that the district court committed "error" in denying it leave to amend, Continental neither explains what the error was nor directly addresses the reasoning of the district court. "Given [Continental's] failure to adequately brief this issue, [it] has [forfeited] it on appeal." *See Denson v. BeavEx, Inc.*, 612 F. App'x 754, 759 (5th Cir. 2015) (per curiam) (citing *Procter & Gamble Co. v. Amway Corp.*, 376 F.3d 496, 499 n.1 (5th Cir. 2004) and Fed. R. App. P. 28(a)(8)(A)); *see also Ortiz v. Am. Airlines, Inc.*, 5 F.4th 622, 627 (5th Cir. 2021) (observing that "allud[ing] to an argument" in a brief is not sufficient to avoid forfeiture of that argument). Continental's attempt in its reply brief to clarify how further amendment would not prove futile does not save it from forfeiture. *See Dominguez-Gonzalez v. Clinton*, 454 F. App'x 287, 291 n.1 (5th Cir. 2011) (per curiam) (citing *Yohey v. Collins*, 985 F.2d 222, 225 (5th Cir. 1993)). We also note that in the Rule 16 conference the district court expressly asked counsel for Continental, "[d]o you want to amend your pleadings?" and counsel responded, "our pleading is absolutely sufficient."