**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Carl Ray HELMS, Dennis Harris, Charles E. Vandervort, Shirley Harris and Paul Earl Briggs, Defendants–Appellants.**

**No. 88–1232.**

United States Court of Appeals, Fifth Circuit.

March 26, 1990.

David C. Schick, Dallas, Tex. (court-appointed), for Carl R. Helms.

Carl R. Helms, La Tuna Tex., pro se.

Steve Sumner, Dallas, Tex. (court-appointed), for Dennis Harris.

Dennis Harris, Piedmont, Okl., pro se.

James A. Clark (argued), Ardmore, Okl., Samuel T. Foutz, Dallas, Tex. (court-appointed), for Vandervort.

Michael P. Gibson, Burleson, Pate & Gibson, Dallas, Tex., for Shirley Harris.

Vincent W. Perini, Dallas, Tex. (court-appointed), for Paul Briggs.

John D. Nation (argued), Dallas, Tex., for Helms, D. Harris & S. Harris.

William Brown, Washington, D.C., Marvin Collins, U.S. Atty., Dallas, Tex., Mervyn Hamburg, U.S. Dept. of Justice, Appellate Div., Crim. Div., Washington, D.C., for plaintiff-appellee.

Before WISDOM, JOHNSON, and DUHÉ, Circuit Judges.

JOHNSON, Circuit Judge:

The five appellants, Carl Helms ("Helms"), Dennis Harris, Shirley Harris, Paul Briggs ("Briggs"), and Charles Vandervort ("Vandervort"), were charged in a forty-two count indictment. Helms, Dennis Harris and Shirley Harris were convicted on the forty-one counts which were submitted to the jury. Briggs and Vandervort were convicted on some, but not all of the counts charged. Appellants raise numerous arguments on appeal. This Court affirms.

## I. FACTS AND PROCEDURAL HISTORY

The superseding indictment filed on August 11, 1987, charged the appellants with conspiracy to commit wire fraud and mail fraud in violation of 18 U.S.C. § 371. The indictment also charged twenty-eight substantive counts of mail fraud, in violation of 18 U.S.C. § 1341, and thirteen substantive counts of wire fraud, in violation of 18 U.S.C. § 1343.[1] The indictment also named Fred Ellis ("Ellis"), Carl Dunn ("Dunn"), Ron Perry ("Perry"), Larry Stout ("Stout"), and William Pike ("Pike").[2]

Appellants Helms, Dennis Harris and Shirley Harris were each charged and convicted on all forty-one counts. Helms was sentenced to consecutive terms of five years' imprisonment on fifteen counts for a total of seventy-five years. Dennis and Shirley Harris were each sentenced to consecutive terms of five years imprisonment on twelve counts for a total of sixty years each. Briggs was convicted on the conspiracy count and on thirty of the thirty-two substantive counts with which he was charged. Vandervort was charged only in the first thirty counts of the indictment. Vandervort was acquitted on the conspiracy count, and convicted on thirteen substantive counts. Briggs and Vandervort were each sentenced to consecutive terms of five years' imprisonment on five counts for a total of twenty-five years each.

This Court must view the facts of this case in the light most favorable to the Government. *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). The evidence presented related principally to four enterprises: National Chem Tech Chemical Company ("NCTC"), Raphael, Inc. ("Raphael"), Max, Inc. ("Max"), and Movies, Inc. ("Movies"). These enterprises sold "distributorships" for various products. The distributorships

1. One substantive count, number 25, was dismissed before the case was submitted to the jury.

2. Ellis and Perry both entered guilty pleas. Dunn, who does not appeal, was convicted on two counts and acquitted on five counts. Stout was acquitted on the twelve counts with which he was charged. Pike was acquitted on the four counts with which he was charged.

were sold at a cost of up to $9,900.00 each, to investors around the country.

NCTC began operations in 1984 and sold distributorships for commercial cleaning chemicals. NCTC closed in March of 1985. Raphael began selling distributorships for women's cosmetics shortly after NCTC closed. Raphael continued selling distributorships until June 1986 even though the company had stopped purchasing cosmetics in January 1986. In March 1986, Max was formed and sold distributorships for men's cosmetics. Movies, a part of Max, was set up to sell distributorships for video cassettes. Both Max and Movies ceased operations in December 1986.

Helms, Dennis Harris and Shirley Harris originated or were involved in the management of all of these enterprises. Vandervort was the President of Raphael. Briggs was a salesman with NCTC, vice-president of Raphael, and President of Max.

Several investors testified at trial as to their individual experiences with the four companies. Their testimony at trial illustrates that the distributorships of each of these companies were sold by way of similar methods. An advertisement was placed to attract potential investors. People who responded to the advertisement were then contacted by a salesperson of the particular company. The salesperson would then attempt to sell the interested person a distributorship by stating, for example, that if the investor was not satisfied, he or she could get a full refund, that the particular company had been in business for several years, and that other distributors were doing very well. The investors would then mail in all or part of the price of the distributorship. Usually, the investor received a congratulatory letter, notifying him that he had been approved for a distributorship. The investor would then send in the balance of the investment.

Some investors received a shipment of inventory, but were then not instructed as to whom they were to distribute the goods. Other investors simply received nothing but apologies from the particular company for delays in shipment. Later, the investors would discover that the company from whom they had purchased a distributorship had been shut down, and the investors were unable to obtain a refund.

Each of the appellants raise several issues on appeal. These will be discussed in turn.

## II. DISCUSSION [3]

### A. *Sufficiency of the Evidence*

■ To support a conviction for mail fraud, the mailing involved must be "for the purpose of executing the scheme." *United States v. Toney*, 605 F.2d 200, 206 (5th Cir.), *cert. denied*, 444 U.S. 1090, 100 S.Ct. 1055, 62 L.Ed.2d 779 (1980) (citations omitted). Appellants Helms, Dennis Harris, Shirley Harris, and Briggs argue that the letters and mailgrams which form the basis of thirteen substantive counts, do not support convictions for mail fraud. These four appellants contend that since the mailings referred to in those thirteen counts were sent to the investors after the distributorship fee had been paid, the mailings were not sent in furtherance of the scheme. These appellants argue that the scheme had been completed once the distributorship fee had been paid. They also argue that the mailings were merely tangential to the underlying scheme, and therefore cannot support convictions of mail fraud.

The mailings and mailgrams referred to in the challenged counts,[4] with one exception, were notifications of acceptance or acknowledgements of payment received.[5] These mailings and mailgrams contained

---

**3.** In addition to the claims discussed below, the appellants also raise as error various evidentiary rulings made by the district court. After careful examination of these claims, they are found to be devoid of merit.

**4.** The 13 counts challenged in this point of error are Count numbers 2, 4, 10, 14, 16, 19, 23, 30, 32, 39, 40, and 42.

**5.** In Count number 23, the mailing referred to was a letter to a distributor who had complained that he had not received his shipment of Raphael cosmetics within 45 days of payment. The letter explained to the investor that Raphael was behind on its shipment schedule due to an unexpected amount of reorders.

various statements, such as "your inventory will arrive shortly," and that the distributor would be contacted in the "near future" regarding product delivery. The fact that these letters were sent after distributorship fees had been paid does not necessarily mean that these letters were not sent in furtherance of the scheme to defraud. *United States v. Sampson*, 371 U.S. 75, 83 S.Ct. 173, 9 L.Ed.2d 136 (1962), involved the mailing of acceptance letters. In *Sampson*, the Supreme Court held that where the mails were used to lull victims by assuring them that the promised services would be performed, the mailings were for the purpose of executing the scheme. This Court has stated that "post-purchase mailings which are designed to lull the victim into a false sense of security, postpone inquiries or complaints, or make the transaction less suspect are mailings in furtherance of the scheme." *United States v. Ashdown*, 509 F.2d 793, 800 (5th Cir.), *cert. denied*, 423 U.S. 829, 96 S.Ct. 48, 46 L.Ed.2d 47 (1975). Similarly, in the present case, the mailings and mailgrams were used to lull the holders of distributorships into believing that they had invested in a company which would fulfill the promises and representations previously made. The mailings and mailgrams were not simply tangential to the scheme.

■ Appellant Vandervort also raises a sufficiency of the evidence claim. Vandervort argues that the district court erred in denying him an acquittal because, Vandervort claims, the evidence was insufficient to support a conviction against him. Vandervort contends that a reasonably minded juror would have had a reasonable doubt as to Vandervort's role in this case. Vandervort bases this argument on the fact that he was acquitted on the conspiracy count, but convicted on thirteen substantive counts; he argues that this verdict was inconsistent. Initially, we state that a jury verdict need not necessarily be consistent. *United States v. Duvall*, 846 F.2d 966 (5th Cir.1988). Furthermore, sufficient evidence was presented to support Vandervort's conviction. Vandervort was the President of Raphael. He had power over distribution of the bank accounts which

held the fees obtained from investors. Vandervort was the "approval committee" which selected distributors for Raphael.

■ In April 1986, Vandervort sent the following letter to Raphael distributors:

... [D]ue to an unexpected amount of reorders from our distributors now in full operation we have surpassed the capability of our factory resources for a short period of time. We're now making arrangements with our factories to make and increase in output, an we should have an increase in flow of products in our facility in Dallas in the next twenty-one days.

Trial Transcript p. 1624. The last order placed by Raphael had been placed in January 1986. The company had no money to purchase more cosmetics. The company ceased operations at the end of June 1986. When distributors called to complain that they had not received their inventory, Vandervort told staff members to advise the distributors of false delivery dates, when the company had nothing to deliver. The evidence was sufficient to support the jury's verdict against Vandervort.

### B. *Leading Questions*

■ During the direct examination of Dennis Harris, his counsel was instructed to refrain from leading the witness, and counsel was warned on two occasions. After another leading question, the district court instructed the jury as to the definition of a leading question. The court then explained to the jury why leading questions are not to be used on direct examination. Appellants Helms, Dennis Harris and Shirley Harris contend that the instruction which the district court gave to the jury constituted prejudicial error requiring a reversal of the convictions, and a new trial. The district court stated the following:

A lawyer might ask his own witness leading questions for any number of reasons. He may want to save time, especially on preliminary or non-contested matters. He may want to calm a witness' nervousness, who's unfamiliar with courtroom surroundings and uneasy about being up in front of you or me, and

he may think the witness' testimony is not quite as good as the lawyer would like it to be, and he may want to shade the witness' testimony by the form of his questions.

Now, on cross examination it's assumed that the witness may be adverse or hostile to the attorney asking the question so we allow leading questions to permit counsel to bring out the points that are necessary to a full understanding of the witness's testimony, such things as his recollection, his biases, his opportunity to observe the facts about which he is testifying, his veracity and so forth.

As I'll instruct you more fully at the end of the case, it will be your job to pass on the credibility of witnesses. One of the things you may want to take into account in doing that is where the lawyers in the case have asked their own witnesses leading questions you may want to consider to what extent the testimony has actually been that of the witness and to what extent it was the witness affirming what the attorney wanted to hear through the form of his questions. So that's what's meant by leading questions when I have directed Mr. Sumner [counsel for Dennis Harris] not to lead the witness.

Trial Transcript, pp. 6180–81. Appellants Helms, Dennis Harris and Shirley Harris argue that this instruction was improper because a lawyer's questioning is a legal matter, and of little concern to the jury. Appellants argue that the instruction was prejudicial because the district court was not acting impartially, and was casting doubt upon the credibility of all of the appellants.

While the district court's elaborate instruction regarding leading questions may have been somewhat unusual, it did not amount to an abuse of discretion. This Court grants substantial deference to a district court's role in a trial. *United States v. Carpenter*, 776 F.2d 1291 (5th Cir.1985); *Moore v. United States*, 598 F.2d 439 (5th Cir.1979). The district court's instruction was a correct statement of the law, and was not directed specifically

at the credibility of any one witness. Furthermore, the jury was also instructed not to construe from anything which the judge did or said during the trial, that the judge had an opinion as to any of the issues presented. Appellants have failed to establish that the district court abused its discretion.

## C. *Excuse of Pregnant Juror*

■ Before the third day of jury deliberations began, the trial judge was advised that a pregnant juror, Melinda Schultz ("Schultz"), was going into labor. Schultz's doctor told her not to attend jury service. The trial judge then excused Schultz as a juror.

All five appellants argue that the trial judge abused his discretion by discharging Schultz. Appellants argue that the trial judge should have postponed the trial until Schultz was able to resume her duties as a juror.

Schultz's doctor advised the district court that Schultz would be physically "out of commission" for a week. Despite this delay of only one week, the trial judge could not assume that Schultz would be mentally or physically prepared to leave her newborn and continue deliberations. This Court has stated that "it is within the trial judge's sound discretion to remove a juror whenever the judge becomes convinced that the juror's abilities to perform [her] duties become impaired." *United States v. Dominguez*, 615 F.2d 1093, 1095 (5th Cir. 1980). The district court did not abuse its discretion by excusing juror Schultz.

■ Appellants also challenge the substitution of alternate juror, Bruce Staffeld ("Staffeld"), for Schultz. The trial judge discussed extensively the available courses of action with trial counsel. Counsel for the appellants were unable to agree on any particular option. The trial judge then questioned alternate juror Staffeld about anything which would make Staffeld unable to begin deliberations with the other jurors as if Staffeld had been charged with those jurors initially. Staffeld stated that he had not discussed the case with anyone,

had not seen anything in the media regarding the case, and that he had not been exposed to any extraneous influences.

The trial judge then questioned each of the eleven jurors, individually. Each juror stated that he or she could "wipe out all of the previous deliberations ... and start again with those deliberations just as if Mr. Staffeld had been sent in to deliberate ... in place of Mrs. Schultz." Record Vol. 58 at 34.

The trial judge then decided to impanel alternate juror Staffeld. The trial judge instructed the jury extensively to begin deliberations anew and put all previous deliberations out of their minds. The trial judge had all notes confiscated which had been made during the previous deliberations. The record demonstrates that the trial judge was extremely careful with respect to questioning the jurors and instructing them as to how they should proceed. The trial judge was also meticulous in following the procedure set forth in *United States v. Phillips,* 664 F.2d 971 (5th Cir.1981), for the substitution of Staffeld. Appellants have failed to show prejudice as a result of Staffeld's substitution; this Court finds no reversible error.

### D. *Disproportionate Sentences*

Appellants Helms, Dennis Harris and Shirley Harris argue that each of their terms of imprisonment constitute cruel and unusual punishment in violation of the eighth amendment. These appellants ask this Court to remand to the district court for a reconsideration of the sentences imposed.

As stated in section I of this opinion, Helms was sentenced to a total of seventy-five years' imprisonment, Dennis and Shirley Harris were each sentenced to sixty years' imprisonment. The district court reached this sentence by cumulating fifteen and twelve sentences, respectively, of

five years each.[6] Each of these appellants had been convicted on forty-one counts of the indictment and faced a potential maximum term of 205 years. Helms, Dennis Harris and Shirley Harris contend that the government alleged only one scheme, and then subdivided this scheme into forty-one separate offenses. This Court has stated that "each use of the mails is a separate offense under the mail fraud statute and that consecutive sentences may be imposed properly, even if the mailings arose from a single concerted plan to defraud." *United States v. Shaid,* 730 F.2d 225, 230 (5th Cir.1984), *cert. denied,* 469 U.S. 844, 105 S.Ct. 151, 83 L.Ed.2d 89.

The district court has broad discretion in sentencing determinations. *United States v. Nichols,* 695 F.2d 86 (5th Cir.1982). In the present case, each of the substantive counts were based on dealings with separate victims, not repetitive mailings to the same victim. Furthermore, the presentence report identified 629 different victims who were defrauded of a total of over five million dollars. The evidence demonstrated that these three appellants were the primary participants, and that Helms was the mastermind in the scheme. This Court determines that the district court did not abuse its discretion, and that the sentences imposed do not violate the eighth amendment. *United States v. Wheeler,* 802 F.2d 778 (5th Cir.1986), *cert. denied,* 480 U.S. 908, 107 S.Ct. 1354, 94 L.Ed.2d 524 (1987) (seventy-five years not disproportionate for forty-five counts of money order alterations).

### E. *Vandervort's Claims*

Appellant Vandervort raises several claims to which we now turn.[7]

Vandervort argues that the district court erred by denying Vandervort's motion for severance pursuant to Federal Rules of Criminal Procedure, Rule 8(b).

---

6. The crimes committed in this case occurred prior to November 1, 1987, therefore the sentencing guidelines are not applicable.

7. In addition to the claims discussed below, Vandervort also argues that the superseding indictment was deficient. Vandervort failed to

raise this claim before the district court, therefore he waived the claim. *United States v. Freeman,* 619 F.2d 1112 (5th Cir.1980), *cert. denied,* 450 U.S. 910, 101 S.Ct. 1348, 67 L.Ed.2d 334 (1981).

Vandervort contends that the acts alleged in the superseding indictment did not arise out of the same series of acts or transactions as required by Rule 8(b). Vandervort's argument is that the indictment charged him with participating in the "same or similar" offenses as some of the defendants, not with being involved in some of the offenses arising out of the same set of acts or transactions.

Rule 8(b) allows joinder if the defendants are "alleged to have participated in the *same act or transaction or in the same series of acts or transactions*". Fed.R. Crim.P. 8(b) (emphasis added). Vandervort's argument is without merit. Additionally, Vandervort argues that the charges against him should have been severed because he was not charged in all of the counts of the indictment. Rule 8(b) states "all of the defendants need not be charged in each count." The district court did not err by denying Vandervort's motion for severance.

 Vandervort next argues that the district court abused its discretion by failing to sever Vandervort's case under Fed. R.Crim.P. 14. To prevail on this claim, Vandervort must show "specific and compelling prejudice." *United States v. Lindell*, 881 F.2d 1313, 1318 (5th Cir.1989).

Vandervort contends that he was extremely prejudiced by the overwhelming evidence of a conspiracy admitted against Helms, Dennis Harris and Shirley Harris. This Court has stated that "[d]emonstrating that the evidence is stronger against a co-defendant than oneself does not satisfy the burden of showing *compelling* prejudice." *United States v. Marable*, 574 F.2d 224, 231 (5th Cir.1978) (citations omitted) (emphasis in original). Furthermore, Vandervort was acquitted by the jury on the conspiracy count. Vandervort has failed to show that the district court abused its discretion.

 Finally, Vandervort contends that his rights were violated under the Speedy Trial Act. The Speedy Trial Act requires that a defendant be brought to trial within seventy days of the filing of an indictment or from the date that the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date occurs last. 18 U.S.C. § 3161(c)(1). The superseding indictment was filed on August 11, 1987. Vandervort was arraigned on August 26, 1987, and trial began November 9, 1987. Vandervort argues that this period of seventy-five days violates the Speedy Trial Act. However, Vandervort ignores the excusable periods of delay. The period of time from the filing of Vandervort's pretrial motions on August 7, 1987, to the decision on those motions on October 9, 1987, is excusable under 18 U.S.C. § 3161(h)(1)(F). The delay from October 19, 1987 to November 9, 1987, was due to the failure of co-defendant Dunn to appear for trial. This was excusable under 18 U.S.C. § 3161(h)(3)(A). Vandervort's rights were not violated.

## III. CONCLUSION

This Court determines that no reversible error occurred in this case; accordingly, we affirm.

AFFIRMED.