**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 96-20475

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

WILSON CALLE,

Defendant-Appellant.

Appeal from the United States District Court
For the Southern District of Texas
August 6, 1997

Before WISDOM, DUHÉ, and BARKSDALE, Circuit Judges.

DUHÉ, Circuit Judge:

Wilson Calle appeals his conviction for conspiracy to distribute cocaine and marijuana.  We affirm.

I

In August 1994, Wilson Calle was indicted along with five co-defendants.  Calle was named only in count two of the indictment, which charged him and four of the co-defendants with conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846.  In the second superseding indictment, filed in December 1995, the Government amended count two, charging Calle and others with conspiracy to possess with intent to distribute cocaine and marijuana, in

violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846.

At trial, the Government introduced evidence establishing that Calle, on two occasions, collected drug money for Dwayne Strothers, a cooperating co-defendant. The first such occasion occurred in March 1994, when Strothers "fronted" co-defendant Antonio Gonzales two kilograms of cocaine with the understanding that Gonzales would pay him from the proceeds of future drug sales. When Gonzales--who also testified against Calle--failed to make timely payment, Strothers enlisted Calle to assist in collecting the money. Strothers, Gonzales, and Calle eventually met in the presence of Arturo Martinez, yet another cooperating Government witness. After a couple of hours, Gonzales was able to procure the money, and he paid it to Strothers in Calle's presence. For his role in collecting the money, Calle was paid $3000 by Strothers. A similar situation unfolded a few weeks later, when Strothers fronted cocaine to Martinez. Martinez thereafter failed to pay, and Strothers again enlisted Calle to collect the money. Calle confronted Martinez but apparently was unsuccessful.

On the basis of the above evidence, a jury convicted Calle on count two. The district court sentenced him to 160 months of imprisonment and 5 years of supervised release. Calle appeals.

II

Calle asserts that the evidence is insufficient to sustain his conviction. Specifically, he points out that the indictment charged him with conspiracy to traffick in cocaine *and* marijuana. He admits that he may have been involved in the cocaine enterprise,

2

but insists that there is no evidence linking him to the marijuana conspiracy. He argues that because he was unaware of an essential part of the enterprise, *i.e.*, the marijuana conspiracy, his conviction must be reversed. See United States v. Conroy, 589 F.2d 1258, 1269 (5th Cir. 1979) (noting that to be convicted of conspiracy, a defendant must be aware of the essential nature and scope of the conspiracy).

Calle's position has little merit, for the Supreme Court rejected a similar argument in Griffin v. United States, 502 U.S. 46 (1991). In Griffin, one of the defendants was charged with conspiring to defraud a federal agency, in violation of 18 U.S.C. § 371. The Government alleged that the conspiracy had two objects: (1) impeding the efforts of the Internal Revenue Service ("IRS") to determine income taxes; and (2) impairing the efforts of the Drug Enforcement Administration ("DEA") to ascertain forfeitable assets. Id. at 47. At trial, the Government presented evidence linking the defendant to the IRS conspiracy, but failed to connect her to the DEA conspiracy. Nevertheless, the Court affirmed the conviction, holding that a general guilty verdict on a multiple-object conspiracy may stand even if the evidence is insufficient to sustain a conviction on one of the charged objects. See id. at 47, 60.

This case is indistinguishable from Griffin. As was the defendant in Griffin, Calle was charged in the conjunctive with a multiple-object conspiracy. The evidence was sufficient to connect Calle to only one of the charged objects. Under Griffin, we must

3

affirm the conviction.  See also United States v. Fisher, 22 F.3d 574, 576 (5th Cir. 1994) (applying the Griffin rule).

III

Calle also contends that the district court erred in denying his motion to dismiss the indictment pursuant to the Speedy Trial Act.  This Court reviews the facts supporting a Speedy Trial Act ruling for clear error and the legal conclusions *de novo*.  See United States v. Johnson, 29 F.3d 940, 942 (5th Cir. 1994).

A

The Speedy Trial Act requires that federal criminal defendants be tried within 70 non-excludable days from the filing date of the indictment or from the date of the defendant's initial appearance before a judicial officer, whichever occurs later.  See 18 U.S.C. § 3161(c)(1); United States v. Willis, 958 F.2d 60, 62 (5th Cir. 1992).  The Act, however, specifies that certain days are to be "excluded" from the 70-day calculation.  See 18 U.S.C. § 3161(h)(1); United States v. Gonzales, 897 F.2d 1312, 1315 (5th Cir. 1990).

Of particular importance to this case are those exclusions resulting from the filing of pretrial motions.  The Act excludes "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion."  18 U.S.C. § 3161(h)(1)(F) ("Subsection F").  The Subsection F exclusion applies in two situations.  First, if a motion requires a hearing, Subsection F tolls the Speedy Trial clock from the date that the motion is filed

4

through the date that the court conducts a hearing on the motion--even if the delay between the filing of the motion and the hearing is unreasonable.[1]  See Henderson v. United States, 476 U.S. 321, 329-30 (1986); United States v. Johnson, 29 F.3d 940, 942-43 (5th Cir. 1994).  In this situation, Subsection F also implicitly excludes the time after the hearing where a district court awaits the filing of all post-hearing briefs and materials reasonably necessary to dispose of the motion.  See Henderson, 476 U.S. at 330-31; Johnson, 29 F.3d at 943.  Once the court has received all of the submissions, it is deemed to have taken the motion "under advisement," after which the court has a maximum of 30 excludable days, pursuant to 18 U.S.C. § 3161(h)(1)(J) ("Subsection J"), to decide the motion before the Speedy Trial clock begins to run.  See Henderson, 476 U.S. at 330-31; Johnson, 29 F.3d at 943.

Second, Subsection F tolls the Speedy Trial clock where a motion does not require a hearing.  See Henderson, 476 U.S. at 329; Johnson, 29 F.3d at 943.  In such a situation, Subsection F excludes the time necessary for "prompt disposition," which, under Subsection J, may be no more than 30 days from the time the motion is taken under advisement.  See Henderson, 476 U.S. at 329-30; Johnson, 29 F.3d at 943.

Finally, in a multi-defendant prosecution such as this one, the Speedy Trial clock begins to run when the last co-defendant makes his initial appearance in court.  See United States v.

_____

[1]When counting days for Speedy Trial purposes, the filing date of the motion and the date of the court's disposition are excludable.  See Johnson, 29 F.3d at 943 n.4.

5

<u>Bermea</u>, 30 F.3d 1539, 1567 (5th Cir. 1994). The excludable delay of one co-defendant may be attributable to all defendants. <u>See</u> <u>id.</u>

B

Although 511 days passed between Calle's original indictment and the beginning of his trial, numerous motions tolled the Speedy Trial clock for the vast majority of those days. Upon analyzing the various motions, we conclude that only 69 non-excludable days accrued before Calle was tried. Thus, we affirm.

The parties agree that the Speedy Trial clock did not begin to run until October 4, 1994, when the latest co-defendant, Raul Elizondo, made his initial appearance in court. Thereafter, **two (2)** days accrued in the Speedy Trial calculation before the Government's motion to certify the case as complex, filed on October 7, 1994, tolled the clock. From this date, numerous overlapping motions tolled the clock pursuant to Subsection F. The last of such motions was co-defendant Antonio Gonzales's motion to reduce bond, filed on December 12, 1994. No hearing was held on this motion, and thus pursuant to Subsection J, it tolled the clock for 30 days through January 11, 1995.

The Speedy Trial clock then ticked for **eight (8)** days until January 20, 1995, when co-defendant Sergio Dominguez moved to substitute his attorney. Pursuant to Subsection F, this motion tolled the clock through February 3, 1995, when the district court granted the motion. Thereafter, **seventeen (17)** non-excludable days accrued before Dominguez's motion to revoke his detention tolled the clock from the filing date on February 21, 1995, through March

6

9, 1995, when the court denied the motion.

The clock remained tolled because on March 10, 1995, Dominguez moved to adopt his co-defendants' motions. While this motion was pending and the clock tolled, Dominguez moved for pretrial determination of entrapment on March 20, 1995. The entrapment motion remained pending when Elizondo moved to revoke his detention on April 14, 1995, and this motion tolled the clock through April 20, 1995, when the court denied the detention motion. Thereafter, **twenty-six (26)** more non-excludable days lapsed before the Government moved to dismiss its case against co-defendant Dwayne Strothers on May 18, 1995.[2]

The Speedy Trial clock was still tolled by the motion to dismiss when the district court, on May 25, 1995, issued a warrant for the arrest of co-defendant Joe Burrell, who failed to appear on that date. Burrell's absence tolled the clock through August 29, 1995, when he was rearrested.[3] On the same day that Burrell was rearrested, Calle moved to dismiss the indictment on the grounds that the delay in bringing him to trial violated the Speedy Trial Act. Because a hearing was required, the clock remained tolled until the court both held a hearing and denied the Speedy Trial

---

[2]This calculation does not include May 16, 1995, when the clock was tolled because of Calle's rearraignment. See United States v. Ortega-Mena, 949 F.2d 156, 158 (5th Cir. 1991) (holding that the arraignment date is excludable under 18 U.S.C. § 3161(h)(1)).

[3]Delay resulting from an unavailable defendant will toll the Speedy Trial clock. See 18 U.S.C. § 3161(h)(3)(A); United States v. Helms, 897 F.2d 1293, 1300 (5th Cir. 1990) (holding that one co-defendant's failure to appear tolled the clock for another co-defendant pursuant to § 3161(h)(3)(A)).

motion on November 28, 1995.

The clock began to run after November 28, 1995, and **sixteen (16)** non-excludable days accrued until Gonzales filed a motion on December 15, 1995. That motion remained pending until the trial date on January 9, 1996, and thus the Speedy Trial clock remained tolled during that time.

Based on the above chronology, a total of **sixty-nine (69)** non-excludable days passed between the last co-defendant's initial appearance in court and the beginning of Calle's trial. Because Calle was tried within 70 non-excludable days, we conclude that the delay in bringing him to trial did not violate the Speedy Trial Act.[4]

IV

For the foregoing reasons, we affirm Calle's conviction. AFFIRMED.

---

[4]The Government contends that the continuances granted by the district court also tolled the Speedy Trial clock. <u>See</u> 18 U.S.C. § 3161(h)(8)(A); <u>United States v. Jones</u>, 56 F.3d 581, 583 (5th Cir. 1995). Because we hold that the various motions sufficiently tolled the clock under the Speedy Trial Act, we need not reach the issue whether the court's continuances also tolled the clock.