# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

October 17, 2018

Lyle W. Cayce
Clerk

No. 17-11206

HSBC BANK USA, N.A., as Trustee for Merrill Lynch Mortgage Loan Asset-Backed Certificates Series 2005-WMCI,

> Plaintiff - Appellee

v.

KENNETH E. CRUM,

> Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas

Before STEWART, Chief Judge, and WIENER and HIGGINSON, Circuit Judges.

WIENER, Circuit Judge:

Defendant-Appellant Kenneth E. Crum ("Defendant" or "Crum") executed a home equity note creating a lien on his home. When Crum defaulted on the note, Plaintiff-Appellee HSBC Bank, USA, N.A. ("Plaintiff" or "HSBC") sent Crum a notice of default and notice of acceleration, indicating that the loan would mature on June 10, 2009. During the next few years, Crum filed for Chapter 7 bankruptcy and filed an independent lawsuit seeking to prevent foreclosure. After these issues were resolved, HSBC filed this lawsuit in 2014, seeking to foreclose on the property. HSBC then filed a motion for summary

No. 17-11206

judgment which the district court granted. Crum now appeals that decision. We affirm.

## I. FACTS AND PROCEEDINGS

In 2004, Crum executed a home equity note (the "Note") and signed a Home Equity Security Instrument (the "Security Instrument") that created a lien on his real property. HSBC, as Trustee for Merrill Lynch Mortgage Loan Asset-Backed Certificates Series 2005-WMCI, became the holder of the Note and the Security Interest in 2009. When Crum stopped making timely payments, HSBC's mortgage servicer, Wilshire Credit Corporation, sent Crum a Notice of Default and Intent to Accelerate in May 2009, followed by a Notice of Acceleration of Loan Maturity on June 10, 2009.[1] HSBC had four years, from that date, or until June 10, 2013, to foreclose.[2] Meanwhile, on June 3, 2010, Crum had filed for Chapter 7 bankruptcy. The bankruptcy court granted him a discharge on October 7, 2010.

HSBC subsequently filed for foreclosure under Texas Rule of Civil Procedure 736. Crum then filed an independent lawsuit in state court on July 4, 2011, seeking to prevent HSBC's foreclosure. The defendants in that lawsuit were granted summary judgment on November 14, 2012.

The mortgage servicer at the time, Select Portfolio Services, sent Crum a Notice of Default on October 15, 2013, requesting less than the full amount owed to satisfy the debt, thereby effectively abandoning acceleration.[3] Select Portfolio Services subsequently reaccelerated the loan in March 2014. Then, in

---

[1] There is another Notice of Acceleration of Loan Maturity in the record dated June 11, 2009. Because both parties agree that the Notice of Acceleration was effective on June 10, 2009, we evaluate the timeliness of HSBC's claims based on that date.

[2] *See* TEX. CIV. PRAC. & REM. CODE § 16.035(a).

[3] *See Curry v. Ocwen Loan Servicing LLC*, No. H-15-3089, 2016 WL 3920375, at *5 (S.D. Tex. July 14, 2016) ("Under Texas law the parties can abandon acceleration by agreement or actions.").

No. 17-11206

April 2014, a new servicer, Nationstar Mortgage LLC ("Nationstar"), revoked that acceleration to "provide an opportunity to fully cure the default." On May 21, 2014, however, Nationstar sent a final Notice of Acceleration of Loan Maturity.

HSBC filed the instant foreclosure suit on September 29, 2014, then filed a motion for summary judgment. The district court granted summary judgment to HSBC. Crum now appeals, contending that (1) HSBC was not the holder of the Note and therefore lacked standing to bring this claim; (2) HSBC's lawsuit was untimely; and (3) the final judgment is invalid because it fails to comply with Texas Rule of Civil Procedure 309.

## II. LAW AND ANALYSIS

### A. Standard of Review

We review the grant of summary judgment de novo and apply the same standard as the district court.[4] Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[5] If the moving party meets that burden, the non-moving party must show the existence of a genuine issue for trial,[6] and the evidence and the inferences must be viewed in the light most favorable to the non-movant.[7] Conclusional allegations, unsubstantiated assertions, or a mere "scintilla" of evidence are insufficient to defeat summary judgment.[8]

---

[4] *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (citing *Willis v. Coca Cola Enters., Inc.*, 445 F.3d 413, 416 (5th Cir. 2006)).

[5] FED. R. CIV. P. 56(a).

[6] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986).

[7] *FDIC v. Dawson*, 4 F.3d 1303, 1306 (5th Cir. 1993).

[8] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

No. 17-11206

B.    Holder of the Note, or the Security Instrument, or Both

The main factual dispute here is who owned the Note and Security Instrument at the time HSBC filed suit. According to HSBC, it has owned and held the Note since 2009. Crum contends, however, that Bank of America assigned the Note and Security Instrument to Nationstar in 2013, indicating that at some point prior to that date, HSBC had assigned the Note and Security Instrument to Bank of America. Crum further alleges that he contacted two HSBC representatives about the Note, and that they could not find a record that he had a mortgage with HSBC. HSBC responds that it did not assign the Note, but instead had delegated the servicing of the Loan Agreement to BAC Home Loans Servicing LP, a subsidiary of Bank of America N.A., on March 1, 2010.

Crum contends that the district court erred in granting summary judgment to HSBC because HSBC had failed to demonstrate that it owned the Note and Security Interest. According to Crum, this means that HSBC did not have standing to bring the claim, so the district court lacked subject matter jurisdiction.

Standing is a component of subject matter jurisdiction.[9] "[T]he jurisdictional issue of standing is a legal question for which review is de novo."[10] Subject matter jurisdiction may be raised at any time, and may even be raised for the first time on appeal.[11] Here, the district court determined that Crum did not present a genuine dispute of material fact as to whether HSBC owned the Note and Security Instrument and thus had standing to bring the claim. The district court held that the uncontroverted evidence demonstrated

---

[9] *Sample v. Morrison*, 406 F.3d 310, 312 (5th Cir. 2005).

[10] *Crane v. Johnson*, 783 F.3d 244, 250–51 (5th Cir. 2015).

[11] *See Sample*, 406 F.3d at 312.

that HSBC was the owner of the note at the time it filed its foreclosure lawsuit. Crum now challenges that element of the district court's summary judgment decision.

Even if Crum may rely on the 2013 Assignment, he still has failed to raise a genuine factual dispute as to whether HSBC held or owned the Note at the time it filed the lawsuit. HSBC argues that Crum waived any arguments based on the 2013 Assignment, because he did not raise them in his response to HSBC's motion for summary judgment, but submitted the 2013 Assignment for the first time in his motion to amend the judgment. HSBC contends that, because Federal Rule of Civil Procedure 59(e) specifies that a motion to amend judgment "cannot be used to raise arguments that could, and should, have been made before the judgment issued," Crum is barred from relying on the 2013 Assignment. HSBC also argues that, as Bank of America's only interest in the loan was that of a mortgage servicer, that is the only interest that could have been transferred by the 2013 Assignment.

HSBC submitted undisputed evidence that it was the holder and owner of the Note and Security Instrument from and after 2009. Crum's affidavit detailing his phone calls to HSBC about his mortgage do not establish that HSBC was no longer the holder or owner of the Note. Neither does the 2013 Assignment contradict the fact that HSBC remained the owner and holder of the Note. Bank of America and Nationstar are the only parties to that agreement. HSBC admits that Bank of America was the servicer of the Note, but there is no evidence indicating that Bank of America ever owned or held the Note or Security Instrument. The 2013 Assignment is ambiguous regarding what interest Bank of America was transferring, so that argument does not undermine HSBC's evidence that it was the holder of the Note.

No. 17-11206

Furthermore, "Texas courts have explained on multiple occasions that a note and a deed of trust constitute separate actions."[12] Because those two types of agreements constitute separate actions, "Texas courts have 'rejected the argument that a note and its security are inseparable by recognizing that the note and the deed-of-trust lien afford distinct remedies on separate obligations.'"[13] Even if HSBC had not owned or had any interest in the Deed of Trust, this would not demonstrate that it no longer owned or held the Note, which constitutes an entirely separate instrument.[14] Because Crum failed to present evidence raising an issue of material fact as to HSBC's ownership of the note, the district court properly granted summary judgment on this issue.

C. Tolling of the Statute of Limitations

A suit to foreclose on real property must be brought within four years after the cause of action accrues.[15] A cause of action for foreclosure normally accrues on the maturity date of the note.[16] When a note or deed of trust secured by real property includes an optional acceleration clause, "the action accrues . . . when the holder actually exercises its option to accelerate."[17] The parties do not dispute that the Security Instrument includes an optional acceleration clause and that HSBC first accelerated the Note on June 10, 2009. Unless the limitations period was tolled, the statute of limitations would have expired on June 10, 2013. Thus, to reset the limitations period, HSBC would have had to abandon acceleration prior to that date. The parties agree that

---

[12] *Wiley v. Deutsche Bank Nat'l Tr. Co.*, 539 F. App'x 533, 536 (5th Cir. 2013) (unpublished).

[13] *Id.* (quoting *Bierwirth v. BAC Home Loans Servicing, L.P.*, No. 03–11–00644–CV, 2012 WL 3793190, at *3 (Tex. App.—Austin Aug. 30, 2012, no pet.)).

[14] *See id.* at 536.

[15] TEX. CIV. PRAC. & REM. CODE § 16.035.

[16] *Id.*

[17] *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001).

No. 17-11206

HSBC abandoned the acceleration of the loan on October 15, 2013—27 days after the limitations period would have expired.

The district court held that HSBC's suit was timely because the limitations period was tolled by two different lawsuits. First, the court held that the limitations period was tolled for 127 days when Crum filed for bankruptcy in June 2010. Second, it determined that the limitations period was tolled for 500 days under Texas Rule of Civil Procedure 736 when Crum filed an independent lawsuit to prevent foreclosure. Crum concedes that his bankruptcy suit tolled the statute of limitations, but contends that it did so for only 126 days, making HSBC's foreclosure suit untimely.

### a. 11 U.S.C. § 108. Extension of time

11 U.S.C. § 108(c) outlines the effect of a bankruptcy stay on statutes of limitations. It states:

> Except as provided in section 524 of this title, if *applicable nonbankruptcy law*, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor, or against an individual with respect to which such individual is protected under section 1201 or 1301 of this title, and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of—
>
> (1) the end of such period, *including any suspension of such period* occurring on or after the commencement of the case; or
>
> (2) 30 days after notice of the termination or expiration of the stay under section 362, 922, 1201, or 1301 of this title, as the case may be, with respect to such claim.[18]

---

[18] 11 U.S.C. § 108(c) (emphasis added).

No. 17-11206

The parties agree that, in the Fifth Circuit, this statute "does not create a separate tolling provision," but rather "states that for the time period to be suspended, other federal or state law must mandate it and then be incorporated through [the statute]."[19] Thus, the first question is whether there is a federal or state tolling provision that suspends the foreclosure statute of limitations while a bankruptcy stay is in effect.

The Texas Supreme Court has not ruled on this issue and Texas appellate courts are split on whether a bankruptcy stay tolls deadlines for Texas causes of action.[20] The parties agree that Texas state law does not have a tolling provision that specifically provides for tolling during an automatic bankruptcy stay. They further agree, however, with the line of Texas cases that accepts the common law tolling principle as an applicable nonbankruptcy law state law tolling provision that may be incorporated through 11 U.S.C. § 108(c).[21]

### b. *Texas common law tolling principle and other methods of computing time*

Although the parties agree that the Texas common law tolling principle may be incorporated through 11 U.S.C. § 108(c) to provide for tolling during the pendency of a bankruptcy stay, they disagree about how to calculate this tolling period. Crum insists that one of several rules should be applied, each of which results in a 126-day tolling period. He first cites Federal Rule of

---

[19] *Rogers v. Corrosion Prods., Inc.*, 42 F.3d 292, 297 (5th Cir. 1995).

[20] *Compare Gantt v. Gantt*, 208 S.W.3d 27, 30–31 (Tex. App.—Houston 2006, pet. denied) ("By its express terms, section 108(c) tolls no time limits, but provides only for some deadlines to be extended for 30 days after notice of the termination of a bankruptcy stay. Beyond this, a time period may be further suspended only if mandated by other federal or state law incorporated through section 108(c)." (internal citations omitted)), *with Peterson v. Tex. Commerce Bank-Austin, Nat'l Ass'n*, 844 S.W.2d 291, 294 (Tex. App.—Austin 1992, no pet.) ("[T]he Bankruptcy Code's automatic-stay provision interrupts the running of applicable limitations periods.").

[21] *See, e.g.*, *Peterson*, 844 S.W.2d at 294.

Bankruptcy Procedure 9006(a)(1) which reads, "[w]hen the period is stated in days or a longer unit of time[,] . . . exclude the day of the event that triggers the period; . . . and . . . include the last day of the period[.]" Crum then cites Federal Rule of Civil Procedure 6(a)(1) for the same calculation method. Both of these methods apply when "computing any time period specified in these rules, in any local rule or court order, or in any statute *that does not specify a method of computing time.*"[22] But these rules are not themselves tolling provisions; rather, they are methods for computing periods of time.

Crum next cites the Texas Code Construction Act, also a method of computing time, which states, "[i]n computing a period of days, the first day is excluded and the last day is included."[23] Finally, Crum suggests that the tolling period might be the precise amount of time, down to the minute, of the bankruptcy stay.

HSBC counters that application of the Texas common law principle itself provides a 127-day tolling period. The well-settled Texas common law principle suspends the statute of limitations when a party cannot pursue its legal remedy.[24] "[W]here 'a person is prevented from exercising his legal remedy by the pendency of legal proceedings, the time during which he is thus prevented should not be counted against him in determining whether limitations have barred his right.'"[25] In *Cade v. Stone*, after considering 11 U.S.C. § 108, a Texas Court of Appeals held that, "[a]pplicable nonbankruptcy law [i.e., Texas common law] . . . provides that [the applicable statute of limitations] w[as] suspended during the time that Cade was prohibited from

---

[22] FED. R. CIV. P. 6(a) (emphasis added); FED. R. BANKR. P. 9006(a) (emphasis added).

[23] TEX. GOV'T CODE ANN. § 311.014(a) (West 2017).

[24] *Cade v. Stone*, No. 13-12-00630-CV, 2013 WL 3009853, at \*5 (Tex. App.—Corpus Christi June 13 2013, no pet.).

[25] *Id.* (quoting *Hughes v. Mahaney & Higgins*, 821 S.W.2d 154, 157 (Tex. 1991)).

9

executing on the judgment due to the automatic bankruptcy stay."[26]

HSBC also cites Fifth Circuit cases that reviewed tolling periods as applied to the Antiterrorism and Effective Death Penalty Act ("AEDPA") and the Speedy Trial Act. This court has held that, for both acts, the tolling period includes the entire time that a petition or motion is pending.[27] This court held that, for the purpose of AEDPA, the term "pending," when used to calculate the tolling period, refers to "the day [the petition] is filed through (and including) the day it is resolved."[28] And, for purposes of the Speedy Trial Act, this court held that the Speedy Trial clock is tolled for the entire time that pretrial motions are pending, including the date filed and date resolved.[29]

### c. *Application of the Texas common law principle results in a 127-day tolling period*

As discussed above, 11 U.S.C. § 108 incorporates state law tolling provisions. The Texas common law tolling principle is an applicable nonbankruptcy law that may be incorporated to toll the foreclosure statute of limitations. That common law principle states that "[w]here 'a person is prevented from exercising his legal remedy by the pendency of legal proceedings, the time during which he is thus prevented should not be counted against him in determining whether limitations have barred his right.'"[30] The methods for computing time periods suggested by Crum are only used when the rule or the law itself does not provide a method for computing time. Here, the Texas common law principle provides a method

---

[26] *Id.* (internal quotation marks omitted).

[27] *Windland v. Quarterman*, 578 F.3d 314, 316 (5th Cir. 2009) (citing 28 U.S.C. § 2244(d)(2)); *United States v. Calle*, 120 F.3d 43, 45–47 (5th Cir. 1997).

[28] *Windland*, 578 F.3d at 317.

[29] *Calle*, 120 F.3d at 46.

[30] *Hughes*, 821 S.W.2d at 157 (quoting *Walker v. Hanes*, 570 S.W.2d 534, 540 (Tex. App.—Corpus Christi 1978, writ ref'd n.r.e.)).

for computing time. The method is strongly implied by the principle itself, which does not allow a statute of limitations to run against parties during the time that they are not able to exercise their remedy. Thus, the method applied by courts has been to toll each day that a party was unable to exercise its remedy.[31] In the context of a bankruptcy stay, this means that the limitations period is tolled every day that the stay is in place—including the day the stay is implemented and the day it is lifted—because the party is "prevented from exercising [its] legal remedy" on both of those days.[32]

As for Crum's contention that this court should limit the tolling period based on the exact amount of time that the stay was in place, the cases he cites in support of this proposition do not implement tolling periods that precise.[33] Even when courts speak with some precision regarding the length of a bankruptcy stay, they do not shave the tolling period down to hours or minutes. For example, in *Misczak v. Deutsche Bank National Trust Company*, after acknowledging a party's argument that "the stay remains in place until *the moment* the case is dismissed," the court held that the proper tolling period following the automatic bankruptcy stay was an even 437 days.[34]

Application of the Texas common law principle requires that the statute of limitations be tolled for a period that includes each day during which HSBC was prevented from foreclosing on the property by the automatic bankruptcy stay. As applied by both federal and state courts in

---

[31] *Peterson*, 844 S.W.2d at 292, 295; *Cade*, 2013 WL 3009853, at *2, 6.

[32] *Peterson*, 844 S.W.2d at 292, 295; *Cade*, 2013 WL 3009853, at *2, 6.

[33] *See Peterson*, 844 S.W.2d at 292, 295; *Cade*, 2013 WL 3009853, at *2, 6.

[34] No. 4:15-cv-381-O, 2016 WL 3647658, at *4 (N.D. Tex. Feb. 12, 2016) (emphasis added). In this case, the parties were arguing not about whether the first day is included in the tolling period but whether the last day is included in the tolling period. The court assumed, without explanation, "that the automatic stay provisions of the bankruptcy code tolls the limitations period beginning on the date a bankruptcy is filed." *Id.*

No. 17-11206

Texas, this period includes the day the stay was implemented and the day the stay was lifted, here for a total of 127 days. This result aligns with the common law principle because it does not allow the statute of limitations to run against HSBC during any day that it was not legally able to exercise its remedy. The district court properly held that HSBC timely filed its foreclosure suit.

D.    Signing and Entering Final Judgment

Crum's final argument is that the district court erred when it signed and entered a final judgment that authorized a foreclosure sale of the Property, without complying with Texas Rule of Civil Procedure 309. HSBC responds that even if the judgment was improper, Crum has waived this argument by failing to raise it in the district court.

Not only did Crum fail to raise this issue in the district court;[35] he even failed to mention Texas Rule of Civil Procedure 309 in his motion to alter final judgment. "An argument not raised before the district court cannot be asserted for the first time on appeal."[36] "To preserve an argument, it 'must be raised to such a degree that the trial court may rule on it.'"[37] As Crum failed to raise this argument in the district court, he has waived it.[38]

III. CONCLUSION

The district court correctly concluded that HSBC was the holder of the Note at the time it filed its lawsuit and that HSBC's foreclosure suit was timely

---

[35] Crum does not mention Rule 309 in his Complaint, his responses to the defendant's motion to dismiss, his responses to the motion for summary judgment, or his own motion to dismiss for lack of subject matter jurisdiction.

[36] *XL Specialty Ins. Co. v. Kiewit Offshore Servs., Ltd.*, 513 F.3d 146, 153 (5th Cir. 2008).

[37] *Id.* (quoting *In re Fairchild Aircraft Corp.,* 6 F.3d 1119, 1128 (5th Cir. 1993)).

[38] *See id.*

because Crum's bankruptcy suit tolled the statute of limitations for 127 days. The district court's judgment in favor of HSBC is
AFFIRMED.