# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
April 1, 2021

Lyle W. Cayce
Clerk

No. 20-50254

Alice Byrd,

*Plaintiff—Appellant*,

*versus*

Lakeview Loan Servicing, L.L.C.; Cenlar, FSB,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:17-CV-620

Before King, Smith, and Haynes, *Circuit Judges*.
Per Curiam:*

Plaintiff-appellant Alice Byrd states claims under Texas law against defendants-appellees Lakeview Loan Servicing, L.L.C., and Cenlar, FSB, based on those entities' attempt to foreclose on her property. The district court granted summary judgment in favor of defendants-appellees on all of Byrd's claims. We AFFIRM.

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 20-50254

**I.**

Plaintiff-appellant Alice Byrd purchased a home in Hays County, Texas, in February 2014. Byrd financed her purchase through a 30-year mortgage from Cornerstone Home Lending secured through a deed of trust. The mortgage was subsequently assigned to defendant-appellee Lakeview Loan Servicing, L.L.C., ("Lakeview") with servicing by defendant-appellee Cenlar FSB ("Cenlar").

Byrd subsequently failed to make the required monthly payments. As a result, Cenlar sent Byrd a notice of default on March 4, 2016. Cenlar's notice informed Byrd that she was in default after missing payments due in February and March. Byrd was told that, if the payments were not received by March 27, 2016, "legal action may be instituted, which could result in your losing your home."

Byrd and Cenlar agreed to a six-month forbearance period during which Byrd was obligated to pay only $5.00 per month. However, Cenlar subsequently rejected Byrd's request for a loan modification or other foreclosure alternative. On May 10, 2017, counsel for Cenlar and Lakeview sent Byrd a notice of acceleration notifying her that the property would be sold on June 6, 2017. On May 29, 2017, Byrd filed suit in state court asserting state law claims and seeking a temporary restraining order to prevent foreclosure of the property. Byrd obtained the temporary restraining order from the state court. According to Lakeview and Cenlar, Byrd still lives in the property and has not made a mortgage payment since January 2016.

On June 26, 2017, Lakeview and Cenlar removed to federal court on the basis of diversity jurisdiction. Byrd filed an amended complaint in August 2019, asserting claims of breach of contract, negligence, violations of the Texas Debt Collection Act ("TDCA"), TEX. FIN. CODE § 392.001, *et seq.*,

No. 20-50254

and violations of the Texas Deceptive Trade Practices Act ("DTPA"), TEX. BUS. & COM. CODE § 17.01, *et seq.*

The district court granted Lakeview and Cenlar's motion for summary judgment as to all of Byrd's claims in February 2020. The court held that Byrd's breach-of-contract claim failed because Lakeview and Cenlar complied with the relevant terms, Byrd's negligence claim was barred by the economic loss doctrine, Lakeview and Cenlar did not breach the TDCA, and Byrd's claim under the DTPA failed because she was not a consumer.

Byrd now appeals, arguing that the case was improperly removed to federal court; Lakeview and Cenlar violated the TDCA by failing to provide the requisite notice of default and notice of intent to accelerate; and the economic loss doctrine did not bar her negligence claim. We consider each argument in turn.

## II.

"A lack of subject matter jurisdiction may be raised at any time and may be examined for the first time on appeal." *Volvo Trucks N. Am., Inc. v. Crescent Ford Truck Sales, Inc.*, 666 F.3d 932, 935 (5th Cir. 2012).

In this case, Bryd first contends that Lakeview and Cenlar failed to establish diversity jurisdiction in removing the case to a federal forum. In their notice of removal, Lakeview and Cenlar alleged that "Lakeview Loan Servicing, LLC is a Delaware limited liability company" with its principal place of business in Florida and "[i]ts member . . . incorporated in Delaware." The notice further alleged that "Cenlar, FSB is a Saving Bank, organized under the laws of the United States of America and located in the state of New Jersey." As Byrd is a citizen of Texas, Lakeview and Cenlar claimed diversity jurisdiction.

No. 20-50254

The citizenship of an LLC such as Lakeview "is determined by the citizenship of all of its members," *Tewari De-Ox Sys., Inc. v. Mountain States/Rosen, L.L.C.*, 757 F.3d 481, 483 (5th Cir. 2014). As Byrd points out, the notice specifies the state of incorporation for Lakeview's sole member but omits reference to its principal place of business. *Neeley v. Bankers Tr. Co. of Tex.*, 757 F.2d 621, 634 n.18 (5th Cir. 1985) (explaining that the citizenship of a corporation is based both on "the principal place of business of the corporation as well as the state of its incorporation"). Further, the citizenship of a federal savings bank such as Cenlar is determined by the location of the bank's "home office," but the notice does not specify the location of such an office. 12 U.S.C. § 1464(x). Accordingly, we asked the parties to submit supplemental briefing to address these issues.

Lakeview and Cenlar responded with an affidavit by Lakeview's CEO and President, which clarified that Lakeview's "sole member is Bayview MSR Opportunity Corp., which is a Delaware corporation with its principal place of business in Coral Gables, Florida." They also filed a declaration from Cenlar's Vice President of Document Execution, Diane McCormick, which clearly stated that "Cenlar's home office is in Ewing, New Jersey."[1] We take

---

[1] Byrd's letter in response argues that McCormick lacked personal knowledge as she made no reference to Cenlar's charter, which, pursuant to relevant federal regulations, would designate the home office of a federal savings association or bank. *See* 12 C.F.R. § 5.40(b) n.3 (2021); *see also* 12 U.S.C. § 1462(3) ("The term 'Federal savings association' means a Federal savings association or a Federal savings bank chartered under section 1464 of this title."). Byrd further argues, under the best evidence rule, that McCormick's declaration cannot be admitted as evidence of the content of the charter. We disagree. McCormick's personal knowledge of the location of Cenlar's home office can be inferred as "such knowledge reasonably falls within [her] 'sphere of responsibility.'" *In re Green*, 968 F.3d 516, 524 (5th Cir. 2020). Moreover, as she did not attempt to prove the truth of the factual contents of the charter, the best evidence rule is irrelevant. *See Dalton v. F.D.I.C.*, 987 F.2d 1216, 1223 (5th Cir. 1993) (explaining that a party cannot "use the best evidence rule to force the [opposing party] to produce the particular type of evidence . . . that he would prefer").

4

No. 20-50254

judicial notice of these facts and find that complete diversity existed at the time of removal. *See Greenwich Ins. Co. v. Capsco Indus., Inc.*, 934 F.3d 419, 422 (5th Cir. 2019) (taking judicial notice of affidavits filed in this court to assure itself of the existence of complete diversity); *see also Tex. Beef Grp. v. Winfrey*, 201 F.3d 680, 686 (5th Cir. 2000) ("When removal is based on diversity of citizenship, diversity must exist at the time of removal.").

Having determined that diversity jurisdiction exists in this case, we proceed to the merits of Byrd's appeal.

## III.

We review a district court's grant of summary judgment de novo, applying the same standard as the district court. *Wilmington Trust, Nat'l Ass'n v. Rob*, 891 F.3d 174, 176 (5th Cir. 2018). "Where, as here, the proper resolution of the case turns on the interpretation of Texas law, we are bound to apply Texas law as interpreted by the state's highest court." *Id.* (quoting *Boren v. U.S. Nat'l Bank Ass'n*, 807 F.3d 99, 104–05 (5th Cir. 2015)). However, "[o]n issues the Texas Supreme Court has not yet decided, we must make an '*Erie* guess' as to how the Court would resolve [the] issue." *Id.* (cleaned up).

## A. Liability Under the TDCA

Byrd appeals the district court's grant of summary judgment as to alleged violations of § 392.301(a)(8) and § 392.304(a)(19) of the TDCA. We address Byrd's claims under each provision in turn.

Section 392.301(a)(8) of the TDCA prohibits a debt collector from "threatening to take an action prohibited by law" in attempting to recover an outstanding loan. TEX. FIN. CODE § 392.301(a)(8). The TDCA also provides, however, that a debt collector is not prohibited from "exercising or threatening to exercise a statutory or contractual right of seizure,

repossession, or sale that does not require court proceedings." *Id.* § 392.301(b)(3). Byrd argues that Lakeview and Cenlar threatened to take an action prohibited by law when they attempted to accelerate after providing an insufficient notice of default and without providing her with a notice of intent to accelerate as required by both the deed of trust and Texas law. Byrd thus contends that Lakeview and Cenlar "were not within any contractual right to accelerate the loan" and therefore threatened an action prohibited by law.

The question at issue is whether a debt collector violates the TDCA by threatening foreclosure after failing to comply with pre-foreclosure notice requirements. This question was answered by the court in *Rucker v. Bank of America, N.A.*, 806 F.3d 828 (5th Cir. 2015). In *Rucker*, we explained that a debt collector does not violate § 392.301(a)(8) by threatening to foreclose so long as it has "retained its *contractual* right to foreclose and the mortgage was in fact in default." *Id.* at 831 (emphasis in original). We specifically held that, "irrespective of any statutory notice requirements," the threat to foreclose does not violate the TDCA so long as the debt collector has not "waived its contractual right to foreclose." *Id.* This conclusion is consistent with the TDCA's protection for "exercising or threatening to exercise a . . . contractual right of seizure, repossession, or sale that does not require court proceedings." TEX. FIN. CODE § 392.301(b)(3). Our decision in *Rucker* makes clear that, so long as such a "contractual right" has not been waived, the TDCA is not violated by failing to comply with relevant notice requirements in attempting to exercise the right.[2] *See Rucker*, 806 F.3d at 831;

---

[2] In this case, the notice requirements at issue were set out in the deed of trust rather than codified in a statute. But we can find no reason to distinguish *Rucker* on that basis under these circumstances. The *Rucker* court held that the violation of such pre-foreclosure notice requirements while exercising a contractual right to foreclose does not also constitute a violation of § 392.301(a)(8). *See Rucker*, 806 F.3d at 831; *see also F.D.I.C.*

*see also McCaig v. Wells Fargo Bank, N.A.*, 788 F.3d 463, 478 (5th Cir. 2015) (finding an actionable violation of § 392.301(a)(8) where mortgagee threatened foreclosure after it had "contracted away its right to foreclose").

Next, Byrd raises a claim under § 392.304(a)(19). Specifically, Byrd contends that "misrepresentations in the 'notice of acceleration' coupled with the threatening 'notice of sale' were false representations or deceptive means to collect a debt" in violation of § 392.304(a)(19) of the TDCA. Section 392.304(a)(19) broadly prohibits a debt collector from "using any . . . false representation or deceptive means to collect a debt." "To violate the TDCA using a misrepresentation, the debt collector must have made an affirmative statement that was false or misleading." *Verdin v. Fed. Nat'l Mortg. Ass'n*, 540 F. App'x 253, 257 (5th Cir. 2013) (cleaned up); *see also Compass Bank v. Collier*, No. 09-19-00112-CV, 2020 WL 6494213, at *13 (Tex. App.—Beaumont Nov. 5, 2020, no pet.) ("To maintain a claim under section 392.304(a)(19), a plaintiff needs to allege that the debt collector made an 'affirmative statement' that was false or misleading."). "Statements that create misrepresentations only through inference or deduction are not affirmative misstatements." *Colbert v. Wells Fargo Bank, N.A.*, No. 20-10394, 2021 WL 921526, at *2 (5th Cir. Mar. 10, 2021) (applying Texas law).

Byrd largely fails to cite any specific "affirmative misstatements" in support of her claim under § 392.304(a)(19). *Id.* Byrd does claim that the notice of acceleration misrepresented the "status and amount of the debt." The notice stated that Byrd was in default and that "the entire unpaid principal balance of the Note, all accrued interest, and all other sums lawfully owing" were due. Byrd does not contest that she was, in fact, in default, but

---

*v. Abraham*, 137 F.3d 264, 268 (5th Cir. 1998) ("[O]ne panel of this court cannot disregard, much less overrule, the decision of a prior panel. Adherence to this rule is no less immutable when the matter determined by the prior panel is the interpretation of state law . . . .").

contends that the notice "misrepresented" that the loan was accelerated because no clear notice of intent to accelerate had been sent. Byrd thus merely argues that the acceleration was *improper* and does not identify an "affirmative statement that was false or misleading." *Compass Bank*, 2020 WL 6494213 at *13 (cleaned up).

Byrd further contests the notice of acceleration's statement that she had been "informed of the intent to accelerate," but does so for the first time on appeal. Though Byrd invoked § 392.304(a)(19) below, she did not do so on the basis of this or other particular statements in the notice of acceleration. "An argument not raised before the district court cannot be asserted for the first time on appeal." *HSBC Bank USA, N.A. as Trustee for Merrill Lynch Mortg. Loan v. Crum*, 907 F.3d 199, 207 (5th Cir. 2018). As Byrd failed to raise the argument before the district court, she has waived it. *See id.*

Based on the foregoing, Byrd's claims under § 392.301(b)(3) and § 392.304(a)(19) of the TDCA fail.

## B. Economic Loss Doctrine

The district court found that Byrd's negligence claim was barred by the economic loss doctrine. Specifically, the court reasoned that Byrd's allegations all arose out of the contractual agreement between the parties. Indeed, under Texas law, "[t]he economic loss rule generally bars a tort claim when no factual basis for the tort claim would exist had the defendant complied with the contract." *Lincoln Gen. Ins. Co. v. U.S. Auto Ins. Servs., Inc.*, 787 F.3d 716, 726 (5th Cir. 2015). And "when the contract spells out the parties' respective rights about a subject matter, the contract—not common law tort theories—governs any dispute about the subject matter." *Exxon Mobil Corp. v. Kinder Morgan Operating L.P. "A"*, 192 S.W.3d 120, 127 (Tex. App.—Houston [14th Dist.] 2006, no pet.).

In seeking review on this issue, Byrd once again raises a new argument

No. 20-50254

not pressed below. In an effort to identify a duty independent of the parties' contractual obligations, Byrd claims for the first time on appeal that Lakeview and Cenlar were negligent in failing to provide pre-foreclosure notices. Such a claim was not set forth in Byrd's Amended Complaint or her response to Lakeview and Cenlar's motion for summary judgment.[3] As such, by failing to raise the argument before the district court, Byrd has waived it. *See Crum*, 907 F.3d at 207.

## IV.

Based on the foregoing, we AFFIRM the district court's grant of summary judgment in favor of defendants-appellees.

---

[3] Rather, Byrd consistently argued below that Lakeview and Cenlar were negligent in "failing to maintain the contents of their file on the Loan, placing personal notices on the front door of [Plaintiff's] home that imply her Loan is still in foreclosure status, and failing to acknowledge Byrd's request for an extension on the Plan."